UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MARIE AQUILINO, Ph.D.,

       Plaintiff - Appellee,

v.

UNIVERSITY OF KANSAS,

       Defendant - Appellant.

No. 00-3150

ORDER
Filed October 9, 2001

Before **EBEL** , **ANDERSON** , and **KELLY** , Circuit Judges.


     Appellant's motion to publish our order and judgment dated July 23, 2001,

is granted.  A copy of the published opinion is attached.

                                   Entered for the Court
                                   Patrick Fisher, Clerk of Court

                                   By:
                                       Keith Nelson
                                       Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

JUL 23 2001

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MARIE AQUILINO, Ph.D.,

Plaintiff - Appellee,

v.

UNIVERSITY OF KANSAS,

Defendant - Appellant.

No. 00-3150

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. CV-99-2231-KHV)

Submitted on the briefs:

Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., Topeka, Kansas, for appellee.

Barbara L. McCloud, Special Assistant Attorney General, University of Kansas, Lawrence, Kansas, for appellant.

Before **EBEL** , **ANDERSON** , and **KELLY** , Circuit Judges.

**ANDERSON** , Circuit Judge.

This is an appeal from the district court's denial of a motion for judgment as a matter of law. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse. [1]

## I.

In 1991, Plaintiff Marie Aquilino was hired as an assistant professor in the Department of Art History at the University of Kansas (KU). After seven years on the KU faculty, she had published only a single, twelve-page article. Her teaching reviews were mixed, at best, and her approach with students, especially undergraduates, was described as at times abrasive.

In December 1997, the faculty of the Art History Department voted unanimously to recommend denying tenure to Dr. Aquilino. At the same time, the faculty recommended granting tenure to two other candidates, one male, the other female. These recommendations, including Dr. Aquilino's, were accepted by a supervisory committee comprising faculty and administrators from outside the Art History Department. In March 1998, the chancellor of the university formally denied tenure to Dr. Aquilino. He issued her a customary one-year

---

[1]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

terminal contract, ending her employment with the university in May 1999. The chancellor awarded tenure to Dr. Aquilino's two colleagues.

Before her termination from the university, Dr. Aquilino filed a charge of discrimination with the Kansas Human Rights Commission. She claimed she was denied tenure because of her sex. She later filed suit against the university. Brought under Title VII of the 1964 Civil Rights Act, her complaint alleged not only sex discrimination but, in addition, that the university unlawfully retaliated against her because she engaged in protected activity, namely the filing of the charge of discrimination.

The district court granted summary judgment in favor of the university on Dr. Aquilino's discrimination claim, but submitted her retaliation claim to the jury. The jury awarded Dr. Aquilino compensatory damages of $35,000, based on its findings that KU: (1) "retaliated against plaintiff for her filing of a sex discrimination claim;" and (2) would not "have taken the same employment actions concerning plaintiff even absent the unlawful motive of retaliation." Appellant's App., Vol. IV, at 940.

After the verdict, the district court issued a minute order denying KU's motion for judgment as a matter of law, a motion made pursuant to Rule 50 of the Federal Rules of Civil Procedure. KU now appeals, raising a single objection to the district court's ruling. KU argues that Dr. Aquilino failed to

present sufficient evidence of adverse employment action, and hence did not present a prima facie case of retaliation.

## II.

We review the district court's denial of KU's Rule 50 motion *de novo* and under the same legal standard as the district court. *Brown v. Gray*, 227 F.3d 1278, 1285 (10th Cir. 2000). A party is entitled to judgment as a matter of law "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000) (quotation omitted). "[I]n reviewing the record, we will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Hampton v. Dillard Dep't Stores Inc.*, 247 F.3d 1091, 1099 (10th Cir. 2001) (alteration removed and internal quotation marks omitted). Judgment as a matter of law must be denied if there is any legally sufficient evidentiary basis for a claim. *Id.* We consider the evidence, and all inferences drawn from the evidence, in favor of the nonmoving party. *Id.*

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing]" against an employee because that employee has "opposed" discrimination in the workplace, or because that employee has "participated . . . in

an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). This provision applies to former employees as well as current employees. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). To make out a prima facie case of retaliation, a plaintiff must show: (1) that he or she engaged in protected activity; (2) that the employer took an adverse employment action against the plaintiff; and (3) that there exists a causal connection between the protected activity and the adverse action. *Jeffries v. Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998).

At trial, KU stipulated that Dr. Aquilino engaged in protected activity, and on appeal it does not challenge the evidence showing the causal connection between Dr. Aquilino's protected activity and the allegedly adverse actions the university took against her. It objects only to the second element, the requirement of an adverse employment action. Though we accept the truth of each of her allegations, we nevertheless conclude that Dr. Aquilino presented insufficient evidence to show that she suffered an adverse employment action.

**III.**

Dr. Aquilino rests on five acts by the university, each of which, she said, amounted to an adverse employment action. These include: (1) her removal, during her terminal-year contract, from graduate student Diane Boze's dissertation committee; (2) three separate denials by the university of her repeated

-5-

requests, supported by her students and at least two academic departments outside the Art History Department, for an ad hoc appointment to the graduate faculty; and (3) the denial of her request to become an adjunct research associate with a university foundation.

### A.     Boze Dissertation Committee

Diane Boze was a graduate student in the Department of Art History. Dr. Aquilino co-chaired her dissertation committee. Two days after testifying at a hearing convened by the Kansas Human Rights Commission in support of her charge of discrimination, Dr. Aquilino was removed as co-chair of Diane Boze's dissertation committee. At the time, Dr. Aquilino was still an employee of the university, serving out her terminal-year contract. Dr. Aquilino argues that her removal from the dissertation committee harmed her future employment prospects.

We conclude that the removal of Dr. Aquilino from the dissertation committee six months before the expiration of her contract, but after the tenure decision, is simply not an adverse employment action. The Supreme Court has explained that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change

in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Although this circuit liberally defines "adverse employment action," it still must be done on a case-by-case basis after "examining the unique factors relevant to the situation at hand." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998).

Dr. Aquilino's claim is that she suffered an adverse employment action based upon her removal from Ms. Boze's dissertation committee because that action would harm her future employment opportunities. But the "unique factor" in this case is that Dr. Aquilino had been denied tenure after several years of non-publication and adverse student comments. Because Dr. Aquilino had already been denied tenure, she certainly had no right to be on a dissertation committee. Given Dr. Aquilino's tenure situation, her removal from the committee had, at best, a de minimis effect on her future employment opportunities. Moreover, her removal from the committee is a normal incident of the denial of tenure. Finally, her removal merely altered her job responsibilities by eliminating her dissertation committee assignment in her last months of employment. Thus, the removal falls within the category of actions that do not constitute an adverse employment action. *Sanchez*, 164 F.3d at 532 ("we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action") (internal quotation omitted).

Against this background, this case does not fit in our "future employment opportunities" cases. The action taken by the university is entirely different from those taken by the defendants in *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1164-65 (10th Cir. 1977), and *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996). Before Dr. Aquilino's removal from the committee, the university's tenure decision had already significantly impaired her ability to obtain employment. This case is also distinguishable because the university did not publicize Dr. Aquilino's removal from Ms. Boze's dissertation committee (at Ms. Boze's request) or communicate with Dr. Aquilino's prospective employers. Instead, the university made an <u>internal</u> decision to remove Dr. Aquilino from the committee. Additionally, the connection between Dr. Aquilino's future employment opportunities and her removal from Ms. Boze's dissertation committee is totally different from referring trumped-up criminal charges or a negative reference letter. *Cf. Berry*, 74 F.3d at 986 (stating that criminal prosecution of plaintiff at his former employer's behest would, like a negative reference letter, have an "obvious impact").

It is one thing to hold that a criminal complaint or negative reference letter is an adverse employment action. It is an entirely different matter to hold that <u>any</u> action taken by a plaintiff's employer (after an employee has a termination date) that may affect the plaintiff's future employment opportunities is an

-8-

adverse employment action. In this case, an employee who is terminated for non-discriminatory reasons should not be placed in a better position than one who has not when it comes to making a retaliation claim based upon a slight duty change occurring during the departure period. This is true despite the testimony by Dr. Aquilino and Professor Lubensky about the harmful affects of not being on the dissertation committee. While that may be so, not being on the dissertation committee and not securing a coterie of graduate students may be the natural consequence of the denial of tenure and Dr. Aquilino's transition from a faculty member to an ex-faculty member.

**B.      Denial of Ad Hoc Faculty Status**

After her termination from the university, and at the urging of her students, Dr. Aquilino sought "ad hoc" appointment—an unpaid, non-benefit-eligible position–to KU's graduate faculty. The university rejected her repeated applications for appointment.

Dr. Aquilino sought this volunteer status to allow her to continue working with five of her graduate students (not including Diane Boze), of whom several were in the Art History Department, one was in the History Department, and another was connected with the Latin American Studies Program. Faculty members in both the History Department and the Latin American Studies Program

recommended approval of Dr. Aquilino's request. The Art History Department voted against making such a recommendation. The final decision in all three cases was made by a university dean, who told jurors that he denied the appointments because, in his estimation, such a role for Dr. Aquilino was inconsistent with KU's earlier decision to deny her tenure.

KU argues that since the ad hoc status Dr. Aquilino sought was unpaid, and since the various appointments would have commenced after her termination, its refusal to grant the appointments did not alter the terms and conditions of Dr. Aquilino's employment. As a result, the university contends, Dr. Aquilino suffered no "demonstrable impact on [her] current employment." Appellant Br. at 34. Dr. Aquilino maintains that the university's decision to deny her ad hoc status effectively stripped her of her remaining graduate students, thereby causing additional harm to her future employment prospects. Echoing her position with regard to Diane Boze, she points to her testimony in which she told jurors that this harm included diminution of her professional reputation as well as the personal embarrassment and humiliation she experienced at the loss of her students. She also testified that prospective employers would infer that her students were taken away because of wrongdoing on her part.

Our reasoning with respect to Dr. Aquilino's removal from Ms. Boze's dissertation committee guides our analysis here. We see little or no difference

between the harms she allegedly suffered, on the one hand, by her removal from the Boze dissertation committee and, on the other, her inability—due to the university's refusal to grant her ad hoc faculty status—to continue working with other graduate students. Both spring from the common claim that the removal of Dr. Aquilino's graduate students constitutes an adverse employment action because it adversely affected her future employment prospects. We have rejected that argument with respect to Ms. Boze; we do so again with respect to KU's refusal to make Dr. Aquilino an ad hoc member of its graduate faculty.

### C. Denial of Research Associate Position

In May of her terminal year, just days before the end of her employment at KU, Dr. Aquilino learned that she had been awarded a prestigious research grant from the American Association of University Women. It was unclear at the time whether she would have to retain some sort of university affiliation to accept the grant. She immediately began discussions with officials from KU's Hall Center for the Humanities in an effort to secure an appointment there as an adjunct research associate. Several weeks after her termination, the Hall Center formally asked a university provost to grant Dr. Aquilino the unpaid, non-benefit-eligible appointment. The provost rejected the Hall Center's request, relying in large part on the same reason given for denying Dr. Aquilino ad hoc membership on the

graduate faculty, that is, any such appointment would have been inconsistent with the university's decision to deny her tenure.

Dr. Aquilino again argues that this denial constitutes an adverse employment action because it harmed her future employment prospects. She points to her trial testimony, which detailed how the denial of any university affiliation deprived her of the opportunity to pursue an alternative career path as a private scholar, one in which she could support herself by attracting scholarly grants and other awards. She testified that the university's refusal limited the number of national grants for which she is eligible, since many government agencies and private foundations require university affiliation as a condition of any grant. KU argues that Dr. Aquilino presented no evidence for these claims apart from her own conclusory opinion.

We agree with the university. Dr. Aquilino's alternative-career-path theory rests on little more than her own, untested belief that she could remake herself as a private academic. Speculative harm does not constitute adverse employment action. *See Trimmer v. United States Dep't of Labor*, 174 F.3d 1098, 1103-04 (10th Cir. 1999) (in a case arising under a federal whistle blower statute, holding that employee's evidence concerning future employment harm was too speculative to constitute adverse employment action). Dr. Aquilino offered no expert testimony supporting her alternate-career-path theory, nor did she present

-12-

evidence showing that other academics had successfully continued their scholarly careers in her proposed manner, particularly after they were denied tenure. In short, she did not demonstrate that it was the university's denial of the research associate position—rather than the tenure denial—that dashed her hopes of becoming a private academic. Furthermore, there is no indication in the record that Dr. Aquilino lost any grant because of the university's decision. Indeed, it appears that despite the lack of university affiliation, she retained even the grant from the American Association of University Women.

The district court's denial of the University of Kansas's Rule 50 motion is REVERSED and the case is REMANDED for entry of judgment as a matter of law in favor of the University of Kansas.