**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 27 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

TERRIE L. HILLIG,

      Plaintiff-Appellant,

v.

DONALD H. RUMSFELD,
SECRETARY, DEPARTMENT OF
DEFENSE, DEFENSE FINANCE AND
ACCOUNTING SERVICE (DFAS),

      Defendants-Appellees.

No. 02-1102

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 99-WY-1164-AJ)

---

Barry Douglas Roseman, Esq., Roseman & Kazmierski, LLC, Denver, Colorado,
Attorney for Plaintiff-Appellant.

Rachel J. Hines, Attorney, Civil Division (Robert D. McCallum, Jr., Assistant Attorney
General, and Marleigh Dover, Attorney, Civil Division, with her on the brief), United
States Department of Justice, Washington, D.C., Attorneys for Defendants-Appellees.

Kristen L. Mix and Danielle V. Wiletsky, Welborn Sullivan Meck & Tooley, P.C.,
Denver, Colorado, and Paula Brantner, National Employment Lawyers Association, San
Francisco, California, filed an amicus brief for the National Employment Lawyers
Association.

---

Before **O'BRIEN, HOLLOWAY** and **McWILLIAMS**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

This is an appeal from a judgment as a matter of law for the defendants-appellees in an employment discrimination case after the jury had returned a verdict for the plaintiff. The district court so held on the ground that an "adverse employment action," under Title VII, may be only those employment actions that result in "tangible harm" to the plaintiff. We disagree and, for the reasons detailed below, hold that a plaintiff need only show a likely effect on future job opportunities.

Plaintiff also appeals, in the alterative, an evidentiary ruling, jury instruction, and an interrogatory on the special verdict form. Since we reverse the judgment as a matter of law and remand for entry of judgment on the jury's verdict, we need not address these claims of error.

**I**

**A**

By March of 1998, Plaintiff-Appellant Terrie Hillig (Hillig) had been employed by the Defense Finance Accounting Service (DFAS) in a clerical position for five years. During her employment with DFAS, Hillig, who is African-American, filed two discrimination complaints, in 1995 and 1996, with the EEO alleging that her "lead," Susan Armer (Armer) and Kathy Reusch (Reusch), her supervisors, had discriminated against her in connection with her approval ratings in 1995, her 1995 request for annual

leave (for which approval was delayed while Caucasian and male employees got prompt approvals), and job training. I Plaintiff-Appellant's Appendix at 71-74.

These complaints were settled in December of 1996. *Id.* at 189-91. The terms of the settlement provided that DFAS would upgrade Hillig's performance appraisal, expunge negative information from her personnel file, and retroactively promote her. *Id.*

In March of 1998, Hillig applied for a position as a Personnel Clerk/Assistant with the Department of Justice (DOJ). *Id.* at 76-77. Hillig testified that at her interview for this position, her interviewer, William Wooden (Wooden), commented that she would be a perfect fit for the position. *Id.* at 79. Hillig further testified that Marilyn Ferguson, a personnel officer at the DOJ, made similar positive comments. *Id.* at 80. Hillig, however, did not receive the position, which was eventually filled by Sandra Dye (Dye), a Caucasian with no prior EEO activity. *Id.* at 48.

Hillig claims she did not receive this position because of negative recommendations from her supervisors at DFAS. An EEO investigation revealed that the DOJ was provided two negative evaluations of Hillig by her supervisors at DFAS, with one supervisor giving "very strong negative feedback." *Id.* at 165. One of her supervisors, Reusch, who had been the subject of Hillig's EEO complaint, testified that she had told a DOJ representative that Hillig had performance problems at work. *Id.* at 143-44. Reusch also admitted characterizing Hillig as a "shitty employee" to Samilton, an EEO investigator with DFAS. *Id.* at 146. According to Wooden, such negative

information would have disqualified a candidate for the DOJ job. *Id.* at 106.

Nonetheless, Wooden claims that the negative information provided by Hillig's supervisors did not cause his decision to hire Dye over Hillig. *Id.* Rather, Wooden testified that he disqualified Hillig because of her long fingernails which, in his experience, would have adversely affected Hillig's typing speed. *Id.* at 107-08. Hillig, however, disputes this reason and testified that her fingernails had always been short. *Id.* at 85.

**B**

Based upon these events, Hillig filed suit against the DFAS alleging three causes of action: (1) racial discrimination; (2) retaliation for her EEO complaints; and (3) violation of her settlement agreement with DFAS. The district court granted DFAS summary judgment on Hillig's claim of breach of her settlement agreement but allowed the other two claims to go to trial. In a special verdict form, the jury found that Hillig's negative references were not motivated by racial discrimination but that they were made in retaliation for her EEO complaints. *Id.* at 259-60. The jury also found that Hillig had not proved by a preponderance of the evidence that but for the unlawful retaliation in March, 1998, Wooden would have offered her the personnel clerk position with the office of the United States Attorney. *Id.* at 260. Nonetheless, the jury awarded Hillig $ 25,000 as the amount that would fairly compensate her for DFAS's illegal retaliation. *Id.*

On basis of the jury verdict, the district court granted DFAS judgment as a matter

of law on Hillig's retaliation claim. The district court so held on the ground that Hillig failed to establish that she suffered an "adverse employment action," which is part of a prima facie case of retaliation under Title VII, because she failed to show that she suffered an "actual tangible injury." Specifically, the district court held that Hillig's failure to show she would have received the DOJ job but for the negative references was fatal to her claim. Accordingly, the court entered judgment for DFAS.

Hillig now appeals, claiming that the district court erred in construing an "adverse employment action" as requiring a showing of a loss of a specific job. Hillig also claims errors, in the alternative, in several trial errors: that the district judge improperly rejected an offer of a photo as evidence, he failed to include necessary jury instructions, and he improperly included an interrogatory on the special verdict form. The National Employment Lawyer's Association, in an *amicus curiae* brief, also argues the district court erred. In particular, they contend that the remedial goals underlying Title VII's anti-retaliation provisions could not be achieved if individuals were required to show loss of a specific job.

For the reasons detailed below, we hold that the district judge erred in requiring Hillig to show that she would have received the DOJ position but for the negative references. Accordingly, we reverse the judgment as a matter of law on this retaliation claim, we reinstate the jury verdict for $25,000 in Hillig's favor; and we find that we need not address the alleged trial errors.

## II

*The adverse employment action* issue

One element of a prima facie case under Title VII is that the plaintiff suffered an "adverse employment action." *Sanchez v. Denver Public Schools*, 164 F.3d 527, 531 (10th Cir. 1998). We "liberally define[] the phrase 'adverse employment action' . . . . Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand." *Id.* (citations and quotation marks omitted). One factor that strongly indicates a challenged action is an "adverse employment action" is that the action causes "harm to future employment prospects." *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996). Nonetheless, "a mere inconvenience or an alteration of job responsibilities," is not an adverse employment action. *Id.*

Here the district court held that Hillig had not established that she suffered "an actual tangible injury" as a result of the negative references she received. This theory of failure of proof, the district judge concluded, dictated judgment as a matter of law for DFAS in light of the Supreme Court's decision in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998), which defined a "tangible employment action" as one entailing "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761. The judge here so held even though *Ellerth*

-6-

involved employer liability for sexual harassment under Title VII, *id.*, because, in his view, the Tenth Circuit had adopted *Ellerth*'s definition for all retaliation claims.[1]  We disagree.

As the district judge noted, *Ellerth* did not purport to define the term "adverse employment action" for all employment discrimination claims. *Id.* at 746-47.  Rather, the issue in *Ellerth* was the scope of an employer's liability for sexual harassment where the employer was not shown to be at fault.  *Id.*  As would be expected, the Court's analysis was concerned with agency principles, *id.* at 755, and the opinion explicitly noted that the "tangible employment action" definition adopted therein was "for resolution of the vicarious liability issue . . . ," *id.* at 761.  Accordingly, the Court held that proof of an adverse "tangible employment action" was relevant insofar as it would preclude an affirmative defense by an employer that the employee unreasonably failed to avoid or reduce the harm suffered.  *Id.* at 765-66; *Faragher v. City of Boca Raton*, 524 U.S. 775,

---

[1]In reaching this conclusion, the district court relied upon our unpublished decision in *Watson v. Norton*, 10 Fed. Appx. 669, 678 (10th Cir. 2001).  We, however, find this case unconvincing for two reasons.  First, unpublished orders and judgments of this court are not binding precedent except under law of the case, res judicata, and collateral estoppel.  10th Cir. R. 36.3(a).

Second, in *Watson*, we cited *Ellerth* for the definition of "tangible employment action," but did not equate "adverse employment action" to "tangible employment action."  Instead, we reiterated our longstanding rule that we liberally define adverse employment action and do not limit that term to "monetary losses in the form of wages or benefits," and "take a case-by-case approach."  10 Fed. Appx. at 678 (citing *Sanchez*, 164 F.3d at 532) (quotation marks and citations omitted).

Accordingly, *Watson* did not alter the law of our circuit.

-7-

805 (1998) (decided the same day as *Ellerth* and holding "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. . . ."). Moreover, the Court made clear in *Faragher*, that although Title VII "mentions specific employment decisions with immediate consequences, *the scope of the prohibition is not limited to economic or tangible discrimination . . . .*" 524 U.S. at 786 (emphasis added).

The limited scope of the decisions in *Ellerth* and *Faragher* was made even more clear in *Pennsylvania State Police v. Suders*, 124 S. Ct. 2342 (2004). There, the Court described *Ellerth* and *Faragher* as delineating two categories of cases where an employee claims the "adverse employment action" was a hostile work environment: "(1) harassment that culminates in a tangible employment action, for which employers are strictly liable, and (2) harassment that takes place in the *absence* of a tangible employment action, to which employers may assert an affirmative defense." *Id.* at 2353. (quotation marks and citations omitted) (emphasis added). Moreover, the Court specifically allowed plaintiffs who allege hostile work environment claims to proceed, subject to the employer's affirmative defense, even where they "allege[] no tangible employment action." *Id.* at 2357. Thus the Court did not require a showing of a "tangible employment action" as part of a prima facie case under Title VII in either *Ellerth* or *Faragher*.

Nor have our decisions imported this "tangible employment action" definition into all Title VII claims. The longstanding rule in our circuit has been to "liberally define[]

the phrase adverse employment action" and not limit the term to simply "monetary losses in the form of wages or benefits." *Sanchez*, 164 F.3d at 532 (citing *Berry v. Stevinson Chevrolet*, 74 F.3d at 986-87). A major underpinning of this rule has been the "remedial nature of Title VII," reasoning that a liberal definition of Title VII is necessary to best carry out its anti-discrimination and anti-retaliation purpose. *Berry*, 74 F.3d at 986-87.

To that end in *Berry* we held that the filing of false criminal charges constituted an "adverse employment action" because such an act causes "harm to future employment prospects." *Id.* There the plaintiff pointed out that false "criminal charges of theft and forgery" constituted an "unlawful employment practice" giving rise to potential Title VII liability. *Id.* at 984. We agreed, even though the plaintiff had not shown a specific job that he did not receive because of the filing of charges and held that "the filing of charges against a former employee may constitute adverse action." *Id.* at 984-85. Thus, in *Berry*, we defined an "adverse employment action" as not limited to those situations where a plaintiff can show loss of an actual job, but also as encompassing those acts that carry a "significant risk of humiliation, damage to reputation, and a concomitant harm to *future employment prospects*." *Id.* at 986 (emphasis added).

In our decisions since *Ellerth* and *Faragher*, we have not abandoned the definition we used in *Berry*.[2] While we have cited *Ellerth* for the proposition that an "adverse employment action" includes those acts that "constitute[] a significant change in

[2]*Ellerth* and *Faragher* were both decided on June 26, 1998, and *Sanchez v. Denver Public Schools* was decided on December 31, 1998, by this court.

employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," we have not held that the term "adverse employment action" is limited to such acts. Rather, we have continued to liberally define the term "adverse employment action" and take a case-by-case approach. *See, e.g., Sinnett v. Safeway*, 337 F.3d 1213, 1217 (10th Cir. 2003); *Garcia v. Pueblo County Club*, 299 F.3d 1233, 1241 (10th Cir. 2002); *Sanchez*, 164 F.3d at 532 (decided 12/31/1998 and citing *Berry v. Stevinson Chevrolet*, 74 P.3d at 986-87).

Even though we do not require the plaintiff to show the loss of a specific job, we do not define "adverse employment action" as encompassing every "action taken by a plaintiff's employer . . . that may affect the plaintiff's future employment opportunities . . . ." *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 935 (10th Cir. 2001). We exclude from that definition those acts that merely have a *de minimis* impact upon an employee's future job opportunities. *Id.* at 934. In *Aquilino*, we found just such a *de minimis* effect and, therefore, a non-materially adverse act. There, the plaintiff was an assistant professor who claimed that her removal from a dissertation committee constituted an "adverse employment action." *Id.* The plaintiff, however, had been denied tenure for legitimate reasons and "removal from the [dissertation] committee is a normal incident of the denial of tenure." *Id.* Accordingly, we reasoned that the plaintiff's removal from the dissertation committee did not adversely affect her prospects for future employment. *Id.*

Similarly, we found another *de minimis* impact in *Tran v. Trustees of the State Colleges in Colorado*, 335 F.3d 1263 (10th Cir. 2004). There, the plaintiff asserted a claim of retaliation under Title VII premised upon two reassignments. *Id.* at 1267. These reassignments, however, involved no hardship to the plaintiff other than a requirement to develop new skills. *Id.* at 1268. The district court applied the "tangible employment action" standard from *Ellerth* in granting the defendants summary judgment. *Id.* at 1267. While we did not disapprove of the district court's use of this standard, we did not affirm on that ground. Instead, we observed that the reassignments were not "adverse" and, therefore, could not be considered an "adverse employment action." *Id.* at 1268. Moreover, we acknowledged that our precedents require us to define "adverse employment action" "more liberally under a case-by-case approach" rather than applying the definition of a "tangible employment action." *Id.* at 1267.

Therefore, an act by an employer that does more than *de minimis* harm, *Aquilino, 268 F.3d at 934*, to a plaintiff's future employment *prospects* can, when fully considering "the unique factors relevant to the situation at hand," be regarded as an "adverse employment action," even where plaintiff does not show the act precluded a particular employment *prospect*, *Berry*, 74 F.3d at 986-87. Accordingly, while we require that the "employer's conduct [] be *materially* adverse to the employee's job status," *Wells v. Colorado Dept. of Transportation*, 325 F.3d 1205, 1213 (10th Cir. 2003) (emphasis added), we allow a plaintiff to show materiality other than by showing a tangible

employment action, *Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998) (rejecting

application of a Seventh Circuit case, *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir.

1996), requiring the plaintiff to show a "change in the terms and conditions of

employment [and] more disruptive than a mere inconvenience or an alteration of job

responsibilities").

Moreover, our holding today does not venture into uncharted territory.  In addition

to being the logical result of our precedents, our decision today is in harmony with views

of the Ninth, and the District of Columbia Circuits.  The Ninth Circuit was confronted

with a case similar to Hillig's in *Hashimoto v. Dalton*, 118 F.3d 671 (9th Cir. 1997).

There, the plaintiff alleged she received a negative job reference for a job with the Army

from the defendant in retaliation for her EEO activities.  *Id.* at 673.  The district court

found as a matter of fact that the Army would not have hired the plaintiff even in the

absence of the negative recommendation.  *Id.* at 675.  Nonetheless, the district court

awarded plaintiff attorneys fees and costs.  *Id.*  The defendants appealed,

arguing that the plaintiff needed to show a job she would have received but for the

negative reference.  *Id.* at 674.  The Ninth Circuit rejected this argument, holding that the

negative job reference was itself the "adverse employment action."  *Id.* at 675.  The court

also noted the fact that "this unlawful personnel action turned out to be inconsequential

goes to the issue of damages, not liability."  *Id.* at 676.

The District of Columbia Circuit reached a similar conclusion in *Smith v.*

*Secretary of the Navy*, 659 F.2d 1113 (D.C. Cir. 1980). There, the plaintiff alleged he did not receive a promotion because of negative job-performance evaluations given for discriminatory reasons. *Id.* at 1114. The district court found that the plaintiff was discriminated against but nonetheless declined to recognize him as the prevailing party entitled to attorneys fees because the plaintiff had not shown he would have received the promotion but for the negative evaluations. *Id.* at 1118. The court of appeals reversed, noting that an "illegal act of discrimination [] is a wrong in itself under Title VII, regardless of whether that wrong would warrant an award of back pay or preferential hiring." *Id.* at 1120. The court also observed that "[a]n unfavorable employee assessment, placed in a personnel file to be reviewed in connection with future decisions concerning pay and promotion, could both prejudice the employee's superiors and materially diminish his chances for advancement." *Id.*

The Third Circuit's decision in *Wilson v. L.B. Foster*, 123 F.3d 746 (3rd Cir. 1997) also supports our conclusion. There, the EEOC alleged an employee had not received a job reference from the defendant, as had other employees, in retaliation for her EEO activity. *Id.* at 753. The district court found for the defendant on the basis that the plaintiff had not shown a particular job she would have received but for the absence of a job reference. *Id.* Although that court cited approvingly an Eleventh Circuit decision holding that proof of the loss of a particular job is necessary where an employee sues a former employer for damages resulting from a negative reference, it nonetheless reversed

-13-

the district court. *Id.* at 754 n.4 (citing *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527 (11th Cir. 1990). In so holding, the Third Circuit explicitly held that "[a]n employer who retaliates can not escape liability merely because the retaliation falls short of its intended result." *Id.* at 754. That court went on to comment that the district court "improperly focused on the action of the prospective employer and not [that of the defendant] in determining whether [there was] an adverse employment action." *Id.* at 753-54.

We are mindful that the Second Circuit has held that even though a negative reference can be an "adverse employment action," proof that the negative reference "caused or contributed to the rejection by the prospective employer" is part of a prima facie case of discrimination under the Americans with Disabilities Act. *Sarno v. Douglas Ellman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2nd Cir. 1999). Similarly, the Eleventh Circuit upheld a district court's ruling that a plaintiff had not established a prima facie case of discrimination under Title VII where he had not shown he would have received a job but for the negative reference. *Bailey v. USX Corp.*, 850 F.2d 1506, 1508 (11th Cir. 1988). These holdings, however, are inconsistent with our own precedents which require us to "liberally construe" the term "adverse employment action," and to take "a case-by-case approach, examining the unique factors relevant to the situation at hand." *Sanchez*, 164 F.3d at 532.

In this case, we are satisfied the record contains sufficient evidence to support the

conclusion Hillig had suffered more than *de minimis* harm to her future employment prospects with the United States Attorney's Office. Specifically, there was evidence showing the negative references were very unfavorable. *Id.* at 146 (Reusch's testimony that she had said Hillig was a "shitty employee"). Moreover, Wooden, the hiring authority at the DOJ, testified that applicants with negative job references would not be hired over applicants without such references. *Id.* at 106. Thus, Hillig has shown that her negative references seriously harm her ability to obtain employment at the DOJ in the future. In other words, Hillig has shown that the negative references carried a "significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Berry*, 74 F.3d at 986.

That the negative references in this case were oral is irrelevant. The negative references Hillig received were communicated to the DOJ, a potential employer, and would likely preclude her from obtaining employment there in the future. *Id.* Thus, Hillig has made her required showing of harm to her future employment prospects with the DOJ. The extent of the harm to her future employment prospects, i.e., whether her employment prospects with all potential employers were harmed, affects the "issue of damages, not liability." *Hashimoto*, 118 F.3d at 676.

Consequently, Hillig has shown she suffered an "adverse employment action" and the judgment against her as a matter of law and for DFAS on her Title VII retaliation claim was inappropriate. As there is no issue raised concerning the sufficiency of the

evidence to support the damages awarded by the jury of $25,000, that verdict should not have been rejected.

## III

### *Additional claims of error*

In addition to arguing that the district court erred in its interpretation of what constitutes an "adverse employment action," Hillig also alleges three trial errors: the exclusion of a photograph from introduction in evidence, the failure to provide a jury instruction, and the inclusion of one interrogatory on the special verdict form. Hillig's assertion of these trial errors, however, was made as an alternative argument for a new trial to be considered only if we were to find the district court did not err in requiring her to show she would have received the job at the DOJ but for the negative references. Plaintiff-Appellant's Corrected Opening Brief at 38. Since we have held that so requiring as a basis for judgment against Hillig as a matter of law on her retaliation claim was error, we do not address the additional alleged trial errors.

## IV

### *Conclusion*

We hold that the district court erred in requiring Ms. Hillig to prove she would have received the DOJ job but for her negative recommendations. It is uncontested that

her evidence was sufficient to support the verdict for damages. Accordingly the judgment as a matter of law against Ms. Hillig is reversed and the cause is remanded with directions to enter judgment on the jury's verdict for Ms. Hillig.

IT IS SO ORDERED.

02-1102 - *Hillig v. Rumsfeld, et al.*

**O'BRIEN**, dissenting.

The procedural posture of this case makes it unique and sets the legal issue in full relief: whether speculative harm can qualify as an adverse employment action. A jury concluded Hillig suffered no racial discrimination, but was a victim of retaliation taken because of a past discrimination claim she had filed. Significantly, it also found the retaliation did not result in the loss that motivated this claim—a job she sought with the office of the United States Attorney for the District of Colorado (CUSA). So, it is fair to ask upon what the $25,000 retaliation damage award rested.

Personnel from the CUSA's office interviewed Hillig and later spoke to two of her past supervisors at the Defense Finance and Accounting Service, an office within the Department of Defense (DOD).[1] One past supervisor gave a positive recommendation. The other (probably Reusch) said she would not rehire Hillig due to performance problems—in particular, difficulties coding personnel actions and accepting criticism when a supervisor identified her mistakes. She also said Hillig had previously filed a

---

[1] Hillig's testimony about her job interview is much more sanguine than that of Wooden, the decision-maker for the CUSA. Majority Op. at 3. According to Wooden, none of the applicants were stellar. In fact, he and Ferguson discussed restarting the entire hiring process because of general dissatisfaction with the pool of applicants. They did not because of time pressure. (Appellee's Supp. App. at 43-44.)

discrimination claim.[2] That is it, except for the hyperbole.

The majority makes much of the "shitty employee" remark by Reusch. Majority Op. at 3, 14. Emotionally strong stuff, but grossly misleading. In fact, the "shitty employee" remark was not made to anyone in the CUSA's office. It was made much later to the EEO representative investigating these allegations. It could not have been part of any retaliatory conduct. That said, a recap can't hurt.

The retaliatory conduct was Reusch's oral statements to the CUSA's representative—would not rehire, performance problems, filed a discrimination claim. Those statements did not cost Hillig the job she sought, nor were they part of any file—not at the DOD, not at the CUSA, not anywhere identified in the record. The **most** that can be said is those oral statements might have poisoned the well for Hillig with the CUSA. But a poisoned well rests upon a string of dubious assumptions: 1) Wooden (or Ferguson, Wooden's assistant) would be the hiring authority should Hillig again apply for a position with the CUSA; 2) Hillig and the details of Reusch's statements about her would have lingered in the recesses of Wooden's (or Ferguson's) memory; and 3) ancient memory would work to Hellig's detriment when recent memory did not (both Wooden and Ferguson testified, to the jury's satisfaction, that Reusch's remarks did not influence any hiring recommendation or decision). Any residual harm to Hillig is so improbable

---

[2]The CUSA's representative testified that the second DOD supervisor (Reusch) mentioned Hillig's previous discrimination claim. Reusch denied making such a statement. Apparently the jury concluded otherwise.

that it can only be assumed. Assuredly it was not proved. The majority thinks such

speculation acceptable. I do not and must dissent.

The district court concluded that our decisions since *Ellerth* and *Faragher* [3] have

redefined "adverse employment action," making it identical (or strikingly similar) to a

"tangible employment action," as the Supreme Court defined that term. [4] The conclusion

may be erroneous, but it is not unwarranted based upon a careful review of our cases. [5]

---

[3]*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

[4]The district judge originally refused a defense motion for judgment as a matter of law, finding it highly probable that the negative reference could have affected Hillig's future employment with the CUSA's office and was, therefore, an adverse employment action. Upon reconsideration he concluded, "the *Ellerth* definition applies also in the context of retaliation claims and that an employment action must be tangible to constitute an adverse employment action." (Appellant's App., Vol. II at 394.) He acknowledged that he originally, and erroneously, relied upon *Apgar v. State of Wyo.*, 221 F.3d 1351 (10th Cir. 2000) (table), a non- precedential case reviewing a summary judgment. He said: "[i]n its prior order, the Court did not consider the difference in procedural posture between the instant case and the Agapar [*sic*] case. It is now persuaded that the mere possibility of an adverse effect is sufficient grounds for a plaintiff to survive summary judgment when there is a dispute of fact; however, a defendant is entitled to a judgment as a matter of law when there is a finding that there is no harm or no dispute of material fact as to the non existence of tangible harm." (*Id.* at 393-94.)

[5] We have applied the "tangible employment action" definition to describe an "adverse employment action" in at least six published and seven unpublished decisions: *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237-39 (10th Cir. 2004); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1230 (10th Cir. 2004); *Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1174 (10th Cir. 2003); *Wells v. Colorado Dep't Of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003); *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 934 (10th Cir. 2001); *Sanchez*, 164 F.3d at 532; *Rennard v. Woodworker's Supply, Inc.*, 101 Fed.Appx. 296, 307 (10th Cir. 2004); *Hill v. Steven Motors, Inc.*, 97 Fed.Appx. 267, 278 (10th Cir. 2004); *McCrary v. Aurora Pub. Schs.*, 57 Fed.Appx. 362, 368 (10th Cir. 2003); *Hinsdale v. City of Liberal, Kan.*, 19 Fed.Appx. 749, 756, n.5 (10th Cir. 2001) (FLSA retaliation claim); *Schmidt v. U.S. West Communications*, 3 Fed.Appx. 766, 768 (10th Cir. 2001); *Carver v. U.S. Dep't of Interior*, 185 F.3d 873 (10th Circ. 1999) (table); *Trujillo v. New Mexico*

Since *Ellerth*, we have maintained that we liberally define "adverse employment action." *See Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003); *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998). We also continue to recognize "[s]uch actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand." *Sanchez*, 164 F.3d at 532 (citation omitted). However, since *Sanchez*, even when applying our most liberal definitions, we have tempered our approach by also stating:

> Conduct rises to the level of "adverse employment action" when it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

*Stinnett*, 337 F.3d at 1217 (citations omitted). *See also Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1241(10th Cir. 2003) (defining "adverse employment action" with *Ellerth* standard).

Recently, in *Meiners v. University of Kan.*, 359 F.3d 1222, 1230 (10th Cir. 2004), we analyzed a plaintiff's retaliation claim as follows:

> To be an adverse action, the employer's conduct must be "materially adverse" to the employee's job status. The adverse action ***must*** amount to "a significant change in employment status," such as "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

*Dep't of Corrections*, 182 F.3d 933 (10th Cir. 1999) (table).

-4-

(emphasis added) (citations omitted).

Likewise, the materiality test rejected in *Jeffries v. State of Kan.*, 147 F.3d 1220, 1232 (10th Cir. 1998), seems to have found new life. In *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003) we said, "[t]o be an adverse action, the employer's conduct must be 'materially adverse' to the employee's job status." The fluidity of our case-by-case approach renders guidance to bench and bar both malleable and transient.

Whether or not one agrees with the majority—that the *Ellerth* and *Faragher* "tangible employment action" test does not apply in this situation[6]—it is necessary to look at our precedents considering harm to future employment prospects.[7] The most notable decision is *Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996), and is relied upon by the majority. Majority Op. at 6, 9-11, 15. In that case, the trial judge found the

---

[6]While it did not expressly say so, it appears the Supreme Court assumed an adverse employment action had to be tangible as well, stating: "[e]very Federal Court of Appeals to have considered the question has found vicarious liability when a discriminatory act results in a tangible employment action." *Ellerth*, 524 U.S. at 760-61.
> Justice Thomas, writing in dissent, also thought that was the majority's view:
> In race discrimination cases, employer liability has turned on whether the plaintiff has alleged an adverse employment consequence, such as firing or demotion, or a hostile work environment. If a supervisor takes an adverse employment action because of race, <u>causing the employee a tangible job detriment,</u> the employer is vicariously liable for resulting damages. See *ante*, at 2268.

*Id.* at 768 (emphasis added).

[7]Unless the Supreme Court or this Court, sitting en banc, has changed the law, the earliest panel decision controls. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993).

employer to have caused a criminal charge to be filed against an employee in retaliation

for the employee's race discrimination charge against the employer. *Stevinson*, 74 F.3d at

984. On appeal, we said such acts amounted to an adverse employment action because

the resulting criminal trial he endured carried a significant risk of humiliation, damage to

reputation and harm to future employment prospects. *Id*. at 986. The notoriety of a

public trial, by itself, distinguishes *Berry* from this case where Hellig lost no immediate

employment prospect and any publicity that could have caused a future loss came as a

result of her acts, not those of the DOD or the CUSA. *Cf. Aquilino v. Univ. of Kan.*, 268

F.3d 930, 934 (10th Cir., 2001) (university did not publicize professor's removal from

committee). I do not think *Berry* controls the result here, but it is by no means clear;

certainly the majority thinks otherwise.

The confusion in our case law led the district judge to observe, quite correctly, "the

only way to distinguish these cases is by focusing on the *likely* effect the employment

action has on future job opportunities." (Appellant's App., Vol. II at 331.) And he did so.

In the January 9, 2002 Order, reconsidering a prior order and granting judgment as a

matter of law to the defendant, the court said:

> In the instant case, the jury found that there was no change in Hillig's
> employment status because it found that the negative job reference did not
> cause the Department of Justice not to hire Hillig. Furthermore, this Court
> finds that the negative employment reference, itself, did not cause a
> significant change in Hillig's employment status because it did not have any
> other effects on Hillig's employment status. Hillig is still employed with
> the Department of Defense, has been promoted since she received the
> negative job reference, and the Department of Justice has since destroyed

-6-

the memorandum of the negative job reference.  Therefore, this Court holds, as a matter law, that Hillig did not suffer a tangible employment action.

(*Id*. at 395.)

In one respect this case is like *Tran v. Trustees of State Colls. in Colo.*, 355 F.3d 1263 (10th Cir. 2004).  Whether we apply the more vigorous "tangible employment action" test or liberally define an "adverse employment action" these horses cannot pull the cart.  It is highly unlikely that Hillig lost any employment opportunity.  As we stated in *Aquilino*, "[s]peculative harm does not constitute adverse employment action.  *See Trimmer v. United States Dep't of Labor,* 174 F.3d 1098, 1103-04 (10th Cir.1999) (in a case arising under a federal whistle blower statute, holding that employee's evidence concerning future employment harm was too speculative to constitute adverse employment action)."  268 F.3d at 936 (citations omitted).

The district court properly exercised its responsibility for superintendence of the jury, insuring the verdict conformed to the law.  Whether it erred in its legal conclusion equating "tangible employment action" with "adverse employment action" matters not, because the record does not support Hillig's arguments in any event.  I would affirm.