O’BRIEN,
dissenting.
The procedural posture of this case makes it unique and sets the legal issue in full relief: whether speculative harm can qualify as an adverse employment action. A jury concluded Hillig suffered no racial discrimination, but was a victim of retaliation taken because of a past discrimination claim she had filed. Significantly, it also found the retaliation did not result in the loss that motivated this claim — a job she sought with the office of the United States Attorney for the District of Colorado (CUSA). So, it is fair to ask upon what the $25,000 retaliation damage award rested.
Personnel from the CUSA’s office interviewed Hillig and later spoke to two of her past supervisors at the Defense Finance and Accounting Service, an office within the Department of Defense (DOD).[1] One past supervisor gave a positive recommendation. The other (probably Reusch) said she would not rehire Hillig due to performance problems — in particular, difficulties coding personnel actions and accepting criticism when a supervisor identified her mistakes. She also said Hillig had previously filed a discrimination claim.[2] That is it, except for the hyperbole.
The majority makes much of the “shitty employee” remark by Reusch. Majority Op. at 1030, 1034. Emotionally strong stuff, but grossly misleading. In fact, the “shitty employee” remark was not made to anyone in the CUSA’s office. It was made much later to the EEO representative investigating these allegations. It could not have been part of any retaliatory conduct. That said, a recap can’t hurt.
The retaliatory conduct was Reusch’s oral statements to the CUSA’s representative — would not rehire, performance problems, filed a discrimination claim. Those statements did not cost Hillig the job she sought, nor were they part of any file — not at the DOD, not at the CUSA, not anywhere identified in the record. The most that can be said is those oral statements might have poisoned the well for Hillig with the CUSA. But a poisoned well rests upon a string of dubious assumptions: 1) Wooden (or Ferguson, Wooden’s assistant) would be the hiring authority should Hillig again apply for a position with the CUSA; 2) Hillig and the details of Reusch’s statements about her would have lingered in the recesses of Wooden’s (or Ferguson’s) memory; and 3) ancient memory would work to Hellig’s detriment when recent memory did not (both Wooden and Ferguson testified, to the jury’s satisfaction, that Reusch’s remarks did not influence any hiring recommendation or decision). Any residual harm to Hillig is so improbable *1037 that it can only be assumed.. Assuredly it was not proved. The majority thinks such speculation acceptable. I do not and must dissent.
The district court concluded that our decisions since Ellerth and Faragher[3] have redefined “adverse employment action,” making it identical (or strikingly similar) to a “tangible employment action,” as the Supreme Court defined that term.[4] The conclusion may be erroneous, but it is not unwarranted based upon a careful review of our cases.[5]
Since Ellerth, we have maintained that we liberally define “adverse employment action.” See Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir.2003); Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir.1998). We also continue to recognize “[s]uch actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand.” Sanchez, 164 F.3d at 532 (citation omitted). However, since Sanchez, even when applying our most liberal definitions, we have tempered our approach by also stating:
Conduct rises to the level of “adverse employment action” when it “constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits”.
Stinnett, 337 F.3d at 1217 (citations omitted). See also Garcia v. Pueblo Country Club, 299 F.3d 1233, 1241 (10th Cir.2002) (defining “adverse employment action” with Ellerth standard).
Recently, in Meiners v. University of Kan., 359 F.3d 1222, 1230 (10th Cir.2004), *1038 we analyzed a plaintiffs retaliation claim as follows:
To be an adverse action, the employer’s conduct must be “materially adverse” to the employee’s job status. The adverse action must amount to “a significant change in employment status,” such as “firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.”
(emphasis added) (citations omitted).
Likewise, the materiality test rejected in Jeffries v. State of Kan., 147 F.3d 1220, 1232 (10th Cir.1998), seems to have found new life. In Wells v. Colorado Dep’t of Transp., 325 F.3d 1205, 1213 (10th Cir.2003) we said, “[t]o be an adverse action, the employer’s conduct must be ‘materially adverse’ to the employee’s job status.” The fluidity of our case-by-case approach renders guidance to bench and bar both malleable and transient.
Whether or not one agrees with the majority — that the Ellerbh and Faragher “tangible employment action” test does not apply in this situation[6] — it is necessary to look at our precedents considering harm to future employment prospects.[7] The most notable decision is Berry v. Stevinson Chevrolet, 74 F.3d 980 (10th Cir.1996), and is relied upon by the majority. Majority Op. at 1031, 1032-33, 1035. In that case, the trial judge found the employer to have caused a criminal charge to be filed against an employee in retaliation for the employee’s race discrimination charge against the employer. Stevinson, 74 F.3d at 984. On appeal, we said such acts amounted to an adverse employment action because the resulting criminal trial he endured carried a significant risk of humiliation, damage to reputation and harm to future employment prospects. Id. at 986. The notoriety of a public trial, by itself, distinguishes Berry from this case where Hellig lost no immediate employment prospect and any publicity that could have caused a future loss came as a result of her acts, not those of the DOD or the CUSA. Cf. Aquilino v. Univ. of Kan., 268 F.3d 930, 934 (10th Cir., 2001) (university did not publicize professor’s removal from committee). I do not think Berry controls the result here, but it is by no means clear; certainly the majority thinks otherwise.
The confusion in our case law led the district judge to observe, quite correctly, “the only way to distinguish these cases is by focusing on the likely effect the employment action has on future job opportunities.” (Appellant’s App., Vol. II at 331.) And he did so. In the January 9, 2002 Order, reconsidering a prior order and granting judgment as a matter of law to the defendant, the court said:
In the instant case, the jury found that there was no change in Hillig’s employment status because it found that the negative job reference did not cause the *1039 Department of Justice not to hire Hillig. Furthermore, this Court finds that the negative employment reference, itself, did not cause a significant change in Hillig’s employment status because it did not have any other effects on Hillig’s employment status. Hillig is still employed with the Department of Defense, has been promoted since she received the negative job reference, and the Department of Justice has since destroyed the memorandum of the negative job reference. Therefore, this Court holds, as a matter law, that Hillig did not suffer a tangible employment action.
(Id. at 395.)
' In one respect this case is like Tran v. Trustees of State Colls. in Colo., 355 F.3d 1263 (10th Cir.2004). Whether we apply the more vigorous “tangible employment action” test or liberally define an “adverse employment action” these horses cannot pull the cart. It is highly unlikely that Hillig lost any employment opportunity. As we stated in Aquilino, “[speculative harm does not constitute adverse employment action. See Trimmer v. United States Dep’t of Labor, 174 F.3d 1098, 1103—04 (10th Cir.1999) (in a case arising under a federal whistle blower statute, holding that employee’s evidence concerning future employment harm was too speculative to constitute adverse employment action).” 268 F.3d at 936 (citations omitted).
The district court properly exercised its responsibility for superintendence of the jury, insuring the verdict conformed to the law. Whether it erred in its legal conclusion equating “tangible employment action” with “adverse employment action” matters not, because the record does not support Hillig’s arguments in any event. I would affirm.

. Hillig's testimony about her job interview is much more sanguine than that of Wooden, the decision-maker for the CUSA. Majority Op. at 1030. According to Wooden, none of the applicants were stellar. In fact, he and Ferguson discussed restarting the entire hiring process because of general dissatisfaction with the pool of applicants. They did not because of time pressure. (Appellee's Supp. App. at 43-44.)

. The CUSA’s representative testified that the second DOD supervisor (Reusch) mentioned Hillig's previous discrimination claim. Reusch denied making such a statement. Apparently the jury concluded otherwise.

. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

. The district judge originally refused a defense motion for judgment as a matter of law, finding it highly probable that the negative reference could have affected Hillig's future employment with the CUSA's office and was, therefore, an adverse employment action. Upon reconsideration he concluded, "the El-lerth definition applies also in the context of retaliation claims and that an employment action must be tangible to constitute an adverse employment action.” (Appellant’s App., Vol. II at 394.) He acknowledged that he originally, and erroneously, relied upon Apgar v. State of Wyo., 221 F.3d 1351 (10th Cir.2000) (table), a nonprecedential case reviewing a summary judgment. He said: "[i]n its prior order, the Court did not consider the difference in procedural posture between the instant case and the Agapar [sic ] case. It is now persuaded that the mere possibility of an adverse effect is sufficient grounds for a plaintiff to survive summary judgment when there is a dispute of fact; however, a defendant is entitled to a judgment as a matter of law when there is a finding that there is no harm or no dispute of material fact as to the non existence of tangible harm.” (Id. at 393-94.)

.We have applied the "tangible employment action” definition to describe an "adverse employment action” in at least six published and seven unpublished decisions: Annett v. Univ. of Kan., 371 F.3d 1233, 1237-39 (10th Cir.2004); Meiners v. Univ. of Kan., 359 F.3d 1222, 1230 (10th Cir.2004); Abuan v. Level 3 Communications, Inc., 353 F.3d 1158, 1174 (10th Cir.2003); Wells v. Colorado Dep't Of Transp., 325 F.3d 1205, 1213 (10th Cir.2003); Aquilino v. Univ. of Kan., 268 F.3d 930, 934 (10th Cir.2001); Sanchez, 164 F.3d at 532; Rennard v. Woodworker's Supply, Inc., 101 Fed.Appx. 296, 307 (10th Cir.2004); Hill v. Steven Motors, Inc., 97 Fed.Appx. 267, 278 (10th Cir.2004); McCrary v. Aurora Pub. Schs., 57 Fed.Appx. 362, 368 (10th Cir.2003); Hinsdale v. City of Liberal, Kan., 19 Fed.Appx. 749, 756, n. 5 (10th Cir.2001) (FLSA retaliation claim); Schmidt v. U.S. West Communications, 3 Fed.Appx. 766, 768 (10th Cir.2001); Carver v. U.S. Dep't of Interior, 185 F.3d 873 (10th Cir.1999) (table); Trujillo v. New Mexico Dep’t of Corrections, 182 F.3d 933 (10th Cir.1999) (table).

. While it did not expressly say so, it appears the Supreme Court assumed an adverse employment action had to be tangible as well, stating: "[e]very Federal Court of Appeals to have considered the question has found vicarious liability when a discriminatory act results in a tangible employment action.” Ellerth, 524 U.S. at 760-61, 118 S.Ct. 2257.
Justice Thomas, writing in dissent, also thought that was the majority's view:
In race discrimination cases, employer liability has turned on whether the plaintiff has alleged an adverse employment consequence, such as firing or demotion, or a hostile work environment. If a supervisor takes an adverse employment action because of race, causing the employee a tangible job detriment, the employer is vicariously liable for resulting damages. See ante, [118 S.Ct.] at 2268.
Id. at 768, 118 S.Ct. 2257 (emphasis added).

. Unless the Supreme Court or this Court, sitting en banc, has changed the law, the earliest panel decision controls. In re Smith, 10 F.3d 723, 724 (10th Cir.1993).