F I L E D
United States Court of Appeals
Tenth Circuit

JAN 27 2004

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HANH HO TRAN,

    Plaintiff - Appellant,

v.

TRUSTEES OF THE STATE
COLLEGES IN COLORADO,
METROPOLITAN STATE
COLLEGE OF DENVER,

    Defendant - Appellee.

No. 02-1048

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 00-S-531)**

Ronald E. Gregson, Gregson & Pixler, P.C., Denver, Colorado, for Plaintiff-Appellant.

Andrew D. Ringel (Thomas J. Lyons with him on the brief), Hall & Evans, L.L.C., Denver, Colorado, for Defendant-Appellee.

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **ARMIJO**,[*] District Judge.

**ARMIJO**, District Judge.

---

[*] The Honorable M. Christina Armijo, United States District Judge for the District of New Mexico, sitting by designation.

On March 9, 2000, Hanh Ho Tran (Ms. Tran) filed a complaint in the United States District Court for the District of Colorado against the Trustees of the State Colleges in Colorado, Metropolitan State College (the College). Ms. Tran's complaint asserted claims against the College for sexual harassment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17. On January 18, 2002, the district court issued a memorandum opinion and order granting summary judgment in favor of the College on all of Ms. Tran's claims. Ms. Tran appeals from the judgment of the district court entered in accordance with that memorandum opinion and order. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and our review is *de novo*. *See Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1209 (10th Cir. 2003). We affirm the judgment of the district court for the reasons set forth below.

**I.**

In her opening brief, Ms. Tran focuses exclusively on her retaliation claim and does not advance any argument or authority in support of her sexual harassment claim. "Issues not raised in the opening brief are deemed abandoned or waived." *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997); *accord Pino v. Higgs*, 75 F.3d 1461, 1463 (10th Cir. 1996). Further, "'[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a

lack of supporting authority or in the face of contrary authority, forfeits the point.'" *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990)). Accordingly, Ms. Tran's sexual harassment claim is abandoned or waived, and we only consider the issues pertaining to her retaliation claim that are raised in her opening brief.

**II.**

We consider Ms. Tran's retaliation claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Wells*, 325 F.3d at 1212. In order to establish a *prima facie* case of retaliation, Ms. Tran must show (1) that she engaged in protected activity; (2) that the College took an adverse employment action against her; and (3) that there exists a causal connection between the protected activity and the adverse action. *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 933 (10th Cir. 2001). If Ms. Tran establishes a *prima facie* case of retaliation, then the burden of production shifts to the College to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the College meets this burden, then summary judgment is warranted unless Ms. Tran can show that there is a genuine issue of material fact as to whether the reasons for the adverse employment action proffered by the College are pretextual. *See Wells*, 325 F.3d at 1212.

## III.

The factual basis for Ms. Tran's retaliation claim is that, as a result of her sexual harassment complaint against her supervisor, Mr. Liberatore, she was reassigned to work under the supervision of the College's "web manager," Ms. Hanna, in March or April 1997, and was later reassigned to work under the supervision of the College's "Student Information Systems Coordinator," Ms. Doyle, in December 1997. According to Ms. Tran, these reassignments constituted adverse employment actions sufficient to establish a *prima facie* case of retaliation, and the College's explanations for the reassignments were pretextual. Ms. Tran also claims that her resignation from the College on September 9, 1999, constituted a constructive discharge based on a pattern of retaliatory conduct by Ms. Doyle and other College personnel that began on the date of her first reassignment in March 1997.

The district court concluded that the College was entitled to summary judgment on these claims because Ms. Tran did not meet her burden of coming forward with evidence that she was subjected to an adverse employment action or that the College's reasons for its actions were pretextual. In determining whether Ms. Tran suffered an "adverse employment action" for purposes of her retaliation claim, the district court referred to its earlier analysis of Ms. Tran's sexual harassment claim, in which the district court quoted the definition of "tangible employment action" provided in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Under that definition, "[a] tangible employment action

constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.*

On appeal, Ms. Tran asserts that the district court applied the wrong legal standard for defining "adverse employment action" in the context of her retaliation claim. In particular, she asserts that the definition of "tangible employment action" cited by the district court should only be used for the purpose of determining *quid pro quo* sexual harassment and not for the purpose of determining whether the requirements of a *prima facie* case of retaliation are met.

We conclude that the district court applied the correct legal standard to determine whether Plaintiff established a *prima facie* case of retaliation. In this regard, we note the district court's conclusion that Ms. Tran "presented no substantial evidence that the reassignment was, in fact, tangible *or adverse* action." Aplt.'s. App., Vol. III, at 1020 (emphasis added). The definition of a "tangible employment action" provided in *Ellerth*, 524 U.S. at 761, has often been used to describe what constitutes an adverse employment action for purposes of a Title VII retaliation claim. *See, e.g.*, *Wells*, 325 F.3d at 1213; *Aquilino*, 268 F.3d at 934. To the extent that we may define "adverse employment action" more liberally under a case-by-case approach, the result would not change here because an adverse employment action "does not extend to a mere inconvenience or an

alteration of job responsibilities" under this approach. *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000) (quotation omitted); *accord Wells*, 325 F.3d at 1213.

**IV.**

Ms. Tran also contends that there are genuine issues of material fact which preclude summary judgment as to whether her reassignments in 1997 constituted adverse employment actions, and whether the College's reasons for these reassignments were pretextual. We conclude that the district court did not err in granting summary judgment with respect to these issues. Neither the transfer to Ms. Hanna's supervision, nor the subsequent transfer to Ms. Doyle's supervision, resulted in a loss of employment, compensation, or benefits. Thus, our discussion is limited to Ms. Tran's claims that these actions were "adverse" in other respects.

Ms. Tran asserts that her first reassignment in March or April 1997 was adverse because she was not qualified to work on Ms. Hanna's "web team" and was not provided with sufficient training or adequately structured work assignments. Based on statements attributed to Ms. Hanna and other employees, she also claims that she was not needed on the "web team." Despite these statements, however, Ms. Hanna gave an "above standard" and "commendable" evaluation of Ms. Tran's performance during the period of her supervision. *See* Aplt.'s App. Vol. III, at 729-30.

Under these circumstances, requiring an employee to develop new skills is not the kind of adversity that can support a *prima facie* case of retaliation, especially in a rapidly evolving field such as computer programming. *See Wells*, 325 F.3d at 1213-14 (concluding that an employee's reassignment to a larger and more sophisticated project was not an adverse employment action). The College's delay in integrating Ms. Tran into the "web team" and providing her with more structured training and work assignments also did not create an adverse change in her job responsibilities under these circumstances. *See id.* at 1215 (concluding that a failure to immediately assign work to an employee who unexpectedly became available was not an adverse employment action).

While Ms. Tran may have subjectively felt that she had no choice but to accept the transfer to Ms. Hanna's supervision, there is no evidence that Ms. Tran communicated this feeling to the College at the time the transfer was proposed. On the contrary, Ms. Tran's communications with other employees during this period could reasonably be understood by the College as expressing her wish to be reassigned to a supervisor other than Mr. Liberatore as well as her approval of the transfer to the "web team," which was regarded as a desirable assignment by other employees. *See* Aplt.'s App. Vol. II, at 375-78, 412-14; Vol. III, at 730, 788, 1015-16. Ms. Tran's subsequent complaints about Ms. Hanna did not surface until much later, and Ms. Tran was reassigned to work under Ms. Doyle's supervision at that time. *See id.*, Vol. II, at 467. Further, Ms. Tran retracted this

belated complaint about Ms. Hanna, *see id.*, Vol. II, at 470, and admitted in her deposition that Ms. Hanna did not retaliate against her, *see id.*, Vol. I, at 302.

In any event, the College articulated a legitimate, non-retaliatory reason for Ms. Tran's initial reassignment to the "web team," namely, the need to remedy her complaint of sexual harassment in a manner that appeared consistent with the wishes that she communicated to College personnel in March 1997. "An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998). Thus, if College personnel believed in good faith that Ms. Tran wished to be transferred in March 1997, and they transferred her to the "web team" based on documented statements of her then-existing state of mind, "such belief would not be pretextual even if the belief was later found to be erroneous." *Id.*

The fact that Ms. Tran was transferred to Ms. Doyle's supervision in December 1997 also does not support a reasonable inference of adverse employment action or pretext. The reasons stated by the College for this transfer were that: "This is being done in recognition of your current work assignments in support of the ISI project. Since these assignments are more directly in the area headed by Andrea Doyle, . . . communication and supervisory efficiencies can be gained by officially assigning you to report to Ms. Doyle." Aplt.'s App. Vol. II, at 446. It was later explained to Ms. Tran that her transfer to Ms. Doyle's supervision also was designed to place her "in a more structured

administrative environment" in response to her expression of "discomfort with Ms. Hanna's informal management and communication style after working with her team." *Id.*, Vol. II, at 479; *see also id.*, Vol. II, at 400. Ms. Tran admitted in her opening brief that the transfer to Ms. Doyle's supervision placed her "back in a role in which her qualifications were relevant, and in which she had always previously been successful." Aplt.'s Br. at 21. Ms. Tran initially expressed approval of this transfer, *see* Aplt.'s App. Vol. I, at 239-41, 329; Vol. II at 447, 478, and she received a promotion after working under Ms. Doyle's supervision for approximately four months, *see id.*, Vol. II, at 466. For these reasons, Ms. Tran did not meet her burden of showing that her reassignment to Ms. Doyle's supervision constituted an adverse employment action.

## V.

We next turn to the events which transpired between December 17, 1998, and Ms. Tran's resignation on September 9, 1999. On December 17, 1998, Ms. Tran was called into an unscheduled meeting at which Ms. Doyle brought up the subject of her numerous absences from work and alleged deficiencies in her performance and communication skills. *See* Aplt.'s App. Vol. III, at 777-80, 795-98. On January 19, 1999, Ms. Doyle issued a corrective action to Ms. Tran alleging a pattern of unapproved absences and abuse of sick leave. *See id.*, Vol. II, at 507. This corrective action was later removed from Ms. Tran's personnel file based on a revised designation of her absence from

December 17, 1998, through February 4, 1999, as family medical leave. *See id.*, Vol. II, at 537-42. At the end of March 1999, Ms. Tran received a performance evaluation which stated that her performance had deteriorated in the preceding six months and that she needed improvement in certain areas. *See id.*, Vol. II, at 556-67. On August 3, 1999, Ms. Doyle issued a corrective action to Ms. Tran alleging that she continually missed her deadlines without reason. *See id.*, Vol. II, at 582-83. On August 17, 1999, Ms. Doyle issued another action to Ms. Tran alleging that she willfully failed to perform an assignment competently. *See id.*, Vol. II, at 594-95. Ms. Tran filed grievances with respect to all of the above actions and resigned from her employment at the College on September 9, 1999. *See id.*, Vol. II, at 515-611.

To the extent that the actions occurring from December 17, 1998, to September 9, 1999, are to be considered as part of Ms. Tran's retaliation claim arising from her reassignment, we conclude that the College is entitled to summary judgment because the College articulated legitimate, nonretaliatory reasons for these actions, and the evidence submitted by Ms. Tran does not support a reasonable inference that these reasons are pretextual. While we note that the corrective action issued by Ms. Doyle on January 19, 1999, was subsequently removed from Ms. Tran's personnel file as a result of her grievance, this removal was based on the fact that Ms. Tran later submitted the necessary documentation to justify her absence during the period in question and not because of any finding that the College had acted in a retaliatory or otherwise unlawful manner. The

College had not received the necessary documentation or other justification for Ms. Tran's absences at the time Ms. Doyle issued her corrective action on January 19, 1999, or at the meeting on December 17, 1998. *See* Aplt.'s App. Vol. II, at 537-42. Accordingly, the reasons stated in the College's communications to Ms. Tran regarding the actions taken during the period from December 17, 1998, to September 9, 1999, are sufficient to meet its burden of production under the framework articulated in *McDonnell Douglas*, 411 U.S. at 802-03. It follows that the burden shifts back to Ms. Tran to demonstrate a genuine issue of material fact as to whether these reasons are pretextual. *See id.*

The temporal proximity between an employee's protected conduct and an adverse employment action "is not sufficient by itself to raise an issue of fact" regarding pretext. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000). "'[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual.'" *Id.* (quoting *Hardy v. S.F. Phosphates L.C.*, 185 F.3d 1076, 1080 (10th Cir. 1999)). "The test is good faith belief." *McKnight*, 149 F.3d at 1129. Accordingly, "'[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance.'" *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209 (10th Cir. 1999) (quoting *Furr v. Seagate Techs. Inc.*, 82 F.3d 980, 988 (10th Cir. 1996)).

The evidence of record in this case does not show that the reasons proffered by the College are so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that the College did not act for those reasons. Ms. Tran's numerous absences from work, her failure to complete specific assignments in a timely manner, and her refusal to discuss her work or attend required meetings all provide objective, verifiable grounds for the College's actions that could be, and were, reviewed by other officials during the grievance process. Further, both the College's actions and the grievance process that followed were conducted in accordance with established policies and reveal no disturbing irregularities. It follows that the College is entitled to summary judgment on all of Ms. Tran's retaliation claims relating to her reassignments.

## VI.

We next turn to Ms. Tran's constructive discharge claim. A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit. *See Heno*, 208 F.3d at 858; *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992). In determining whether an employee's working conditions would cause such feelings in a reasonable person, we apply an objective test under which neither the employee's subjective views of the situation, nor her employer's subjective intent with regard to discharging her, are relevant. *See Jeffries v. Kansas*, 147 F.3d 1220, 1233 (10th

Cir. 1998). The question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions. *See id.* Further, conduct which meets the definition of a "tangible employment action" or an "adverse employment action" is not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable. *Cf. Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1231-32 (10th Cir. 2000) (distinguishing constructive discharge from tangible employment action).

In this case, Ms. Tran asserts that all of the College's actions dating from her first reassignment in March or April 1997 to her resignation on September 9, 1999, combine to form a pattern of retaliatory conduct that supports a claim of constructive discharge. *See* Aplt.'s App. Vol. I, at 279-80. Based on our review of the record, we conclude that the College is entitled to summary judgment on Ms. Tran's constructive discharge claim because the actions of the College did not create a situation that was so intolerable that a reasonable person would feel she had no other choice but to resign.

In particular, the evidence of record does not support a reasonable inference that Ms. Tran was forced into a dilemma in which the College required her to choose between tendering her resignation or immediately losing her job as a result of disciplinary action. *See Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222-23 (10th Cir. 2000); *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356-57 (10th Cir.1997). Ms. Doyle's

complaints regarding Ms. Tran's performance and her absences from work, which were expressed at the meeting on December 17, 1998, and in the corrective actions and performance evaluation that followed, did not constitute "disciplinary actions" that would subject her to dismissal under the College's personnel rules. *See* 4 Colo. Code Regs. § 801, ch. 6, at R-6-4 to R-6-9 (2003) (explaining differences between disciplinary actions, corrective actions, and performance ratings). In each instance, the College advised Ms. Tran of her right to challenge the College's actions by means of a grievance under those personnel rules. She exercised that right and remained employed by the College until her resignation.

Ms. Doyle's close supervision of Ms. Tran during the period in question also does not support a reasonable inference that Ms. Tran's working conditions had become intolerable. In light of Ms. Tran's prior complaints that other employees were sexually harassing her or engaging in other inappropriate behavior, as well as her prior complaint that Ms. Hanna did not pay enough attention to her during the period when Ms. Hanna was her supervisor, it was reasonable to expect closer monitoring by Ms. Doyle to ensure that Ms. Tran received adequate supervision and was not subjected to inappropriate behavior by other employees. The fact that Ms. Tran did not view Ms. Doyle's actions in this light and felt distressed by the situation does not suffice to establish a claim of constructive discharge under these circumstances. *See Heno*, 208 F.3d at 858.

## VII.

For the foregoing reasons, we conclude that the district court did not err in granting summary judgment on Ms. Tran's claims of retaliation and constructive discharge, and that she waived or abandoned her sexual harassment claim on appeal. In sum, we are in accord with the district court's conclusion that there was no genuine issue of material fact and that summary judgment was appropriate. Accordingly, the judgment of the district court is **AFFIRMED**.