O’BRIEN, J.,
concurring in the result.
The only relevant question here is whether Spirit and SPEEA (hereinafter the “Union”) agreed to arbitrate individual grievances[1] that may affect other employees, perhaps even most employees. The answer starts and ends with the terms of the Collective Bargaining Agreement (CBA).
“Arbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.” Granite Rock Co. v. Int’l Bhd. of Teamsters, 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (citation and quotation marks omitted). Whether the parties intended to arbitrate grievances concerning a particular issue is determined by the parties’ agreement and ordinary contract principles. Id. at 301, 303, 130 S.Ct. 2847; see also M&G Polymers USA, LLC v. Tackett, — U.S.-, 135 S.Ct. 926, 933, 190 L.Ed.2d 809 (2015). Even in the face of arguments seeking to invalidate them for public policy reasons, very broad agreements to arbitrate have been upheld if they are unambiguous. See, e.g., Am. Express Co. v. Italian Colors Rest., — U.S. -, 133 S.Ct. 2304, 2309, 186 L.Ed.2d 417 (2013) (rejecting plaintiffs’ argument that arbitration agreement which explicitly excludes class actions from its scope violates antitrust law policies); 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 265, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009) (arbitration agreement that “clearly and unmistakably” requires union members to arbitrate ADEA claims is enforceable; rejecting arguments that arbitration is an inappropriate forum to vindicate statutory antidiscrimination rights); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 442, 446, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (arbitration clause requiring arbitration of “[a]ny claim, dispute or controversy ... arising from or relating to” the parties’ agreement required dispute over agreement’s validity to be decided by arbitrator; rejecting Florida Supreme Court’s conclusion that enforceability of arbitration agreement should turn on Florida public policy and contract law); Brown v. Coleman Co., 220 F.3d 1180, 1184 (10th Cir. 2000) (clause requiring arbitration of “all disputes or controversies arising under or in connection with” the plaintiffs employment contract was broad clause requiring arbitration of plaintiffs defamation claim *724 against employer based on employer’s explanation for his termination). The point is worth repeating: when an agreement to arbitrate is unambiguous, policies regarding arbitration, i.e., the presumption of arbitrability, have no place in the analysis.[2] Granite Rock Co., 561 U.S. at 300, 303, 130 S.Ct. 2847; M&G 'Polymers, 135 S.Ct. at 935. So is another: the scope of an agreement to arbitrate is determined, at least in this case, by the terms of the CBA (and affiliated documents) using classic methods for construing contracts. Id.
I recognize that this CBA, like most, deal with the interaction of three entities: the employer, the Union, and the employees for whom the Union is bargaining.[3] It is a mistake to assume, for instance, that the contract rights of the Union and those it represents are either identical or always congruent.[4]
Determination of disputes is covered in Article 3 of the CBA. “The term ‘grievance’ shall mean a written complaint involving the interpretation or application of this Agreement.” (CBA, Section 3.1, Appellant’s App’x at 78.) Analogizing to our pri- or decision, Spirit assumes an individual-company dispute about a company policy having class-wide effect should be treated the same as a union-company dispute about class-based company policies, which is not subject to arbitration (SPEEA II). It reasons that an individual-company dispute over a class-wide issue could not even get started under the four-step sequential grievance process, CBA, Section 3.3 be *725 cause it would be incapable of resolution at Steps 1 and 2. Class-wide issues must be decided by higher authorities than those involved in the first two steps.[5] Ultimately that argument fails, as the Majority Opinion has explained.
Spirit also points to Section 18.2 of the CBA which provides that a discrimination claim may follow the arbitration process only if the claim “is filed on behalf of and pertains to a single employee.” (CBA, Section 18.2, Appellant’s App’x at 106.) It contends this section reaffirms the notion that disputes involving multiple employees are not subject to arbitration. Actually, the plain language of the article shows the opposite to be true. It provides:
Section 18.2 Non-Discrimination Grievances. Notwithstanding any other provision of Article 3, a grievance alleging a violation of this Article 18 [government prohibited discrimination] shall be subject to the grievance and arbitration procedure of Article 3 only if it is filed on behalf of and pertains to a single employee. Class grievances under Article 18 shall not be subject to the grievance and arbitration procedure under this Agreement.
The arbitration provision is restricted to defined discrimination claims. None are involved here. Since Section 18.2 only deals with discrete circumstances, it cannot readily be exported in the manner Spirit encourages. But it offers an apt analogy.
Consider, for example, a particular employment practice that might discriminate against an employee based on race, color, religion, age, etc. and would, therefore, be subject to the grievance process (and, if necessary, arbitration) with respect to that employee. But what if the practice also impacted one other employee, who also filed a separate grievance? Would those two individual grievances then amount to a class-wide grievance, excluded from arbitration? That would seem to stretch logic beyond elastic limits. But what about five individuals, or fifteen? What would be more likely to require exclusion, 25 or 50 or 100? Do the numbers matter or is it more about process? How about a group of employees who claim to be similarly situated and seek to consolidate their possibly disparate claims into one grievance and, if necessary, one arbitration? Spirit might not want to be involved in the intricate process of sorting out employees who are not similarly situated for arbitration and it ought not be required to do so because Section 18.2 excludes class grievances of discrimination claims from arbitration. Spirit could, if it so chose, force each such discrimination claim to individual an determination. But merely claiming an individual grievance is excluded from arbitration because others, perhaps many others, might be similarly situated doesn’t fly.
What about class grievances outside of the prohibited discrimination context? Spirit claims resolution of Hartig’s claim will necessarily affect all employees (no sorting for “similarly situated employees” is necessary) and therefore his claim is not subject to arbitration. But Section 18.2 does not apply outside of its defined parameters and, since I can find no similar *726 provision applicable to the larger context, I am confident that his grievance is subject to arbitration (since Spirit’s other argument has been rejected by this panel). (Majority Op. at 721-23.)
A final word. Article 16 of the CBA incorporates Spirit’s Employee Health and Welfare Benefit Plan, the purpose of which is to provide health, dental, vision, and prescription drug benefits to Spirit’s employees. The costs of the Benefit Plan are borne by contributions from Spirit and its employees. To be eligible to participate in the Plan, an employee must “[ajgree and elect in the manner established by the Plan Administrator to reduce his ... compensation” to contribute to the costs of the Plan. (Benefit Plan, Section 3.01(A), Appellant’s App’x at 329.) The Benefit Plan gives the Plan Administrator “full power to administer [the] Plan in all of its details.” (Benefit Plan, Section 9.01, Appellant’s App’x at 338.) Those powers include, but are not limited to, determining in its discretion an employee’s eligibility to participate in the Plan; “mak[ing] discretionary interpretations regarding the terms of [the] Plan and makfing] factual findings with respect to any issue arising under the Plan, its interpretation to be final and conclusive on all person claiming benefits under [the] Plan”; “reviewing] and rendering] decisions respecting benefit elections under [the] Plan”; and “mak[ing] and enforce[ing] such rules and regulations as it deems necessary or proper for the efficient administration of [the] Plan.” (Id.)
Spirit told the district judge Hartig’s dispute concerned the manner in which employees must reduce them compensation to pay for health benefits. So construed, it claimed the dispute was not arbitrable under the CBA because it must be decided by the Plan Administrator under the Benefit Plan. The district judge disagreed with Spirit’s characterization of the grievance, saying the dispute did not concern the manner in which employees must reduce their compensation but rather the amount to be deducted from the employees’ paycheck. That left the Plan Administrator with full power to administer the Plan, but without the power to establish the employee contribution rate for healthcare benefits.
The district judge’s characterization of Hartig’s grievance is at least debatable. According to Hartig, nothing could be deducted from his paycheck as an “employee premium contribution” once Spirit became self-funded and there was no longer an outside party providing the benefits. His argument, therefore, is not merely over the amount deducted but rather over the nomenclature used to deduct the amount. Indeed, the Benefit Plan says it is “[file-signed to be funded by Employee contributions and by Employer nonelective contributions” and this appears to be true whether or not Spirit or a third-party insurer provides the benefits. (Benefit Plan, Section 1.02, Appellant’s App’x at 325.) This dispute seems well within the Plan Administrator’s powers to decide and, in the context of the CBA, one management can delegate to the Plan Administrator. (CBA, Section 2.1, Appellant’s App’x at 77) (“all ... inherent managerial rights ... are retained and vested exclusively in [Spirit], including, but not limited to, the rights in accordance with its sole and exclusive judgment and discretion,”). And that must be factored into the arbitration equation.
The broad powers assigned to the Plan Administrator may not be amenable to second guessing. Accordingly, if the Plan is construed in pari materia with the CBA it might well be that this issue is not fairly within the scope of matters committed to arbitration. A contract “is interpreted as a whole, and all writings that are part of the *727 same transaction are interpreted together.” Resolution Trust Corp. v. Fed. Savings & Loan Ins. Corp., 25 F.3d 1493, 1499 (10th Cir. 1994).
Although Spirit made a similar argument in the district court it did not raise it on appeal. See Tran v. Trs. of State Colls. in Colo., 355 F.3d 1263, 1266 (10th Cir. 2004) (“Issues not raised in the opening brief are deemed abandoned or waived.”) (quotation marks omitted). I would consider the matter waived for purposes of this appeal, but that should not preclude the district judge from revisiting the issue on remand, should he see fit to do so.
I concur in the result reached by the Majority.

. Hartig claims his grievance applies only to him and affects only his paycheck. Most probably that is untrue, but it is also irrelevant. The district judge correctly recognized the possible implications for Spirit if Hartig prevails in arbitration—if, under Spirit's self-funded insurance plan, it cannot deduct an "employee premium contribution” from Har-tig's paycheck, over time it will likely be unable to do so with respect to other employees. But his decision leaves begging the critical question—what the parties intended about arbitration in their CBA.

.Our circuit has not been entirely faithfhl to Granite Rock. We have either failed to mention it, see, e.g., Int’l Bhd. of Elec. Workers, Local #111 v. Pub. Serv. Co. of Colo., 773 F.3d 1100, 1107-08 (10th Cir. 2014), or, we mention it, but then retreat to older precedent. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int’l Union & its Local 13-857 (United Steel) v. Phillips 66 Co., 839 F.3d 1198, 1204-05 (10th Cir. 2016). As a result, we have said "when a collective-bargaining agreement contains an arbitration provision, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.” Int’l Bhd. of Elec. Workers, Local # 111, 773 F.3d at 1107; see also United Steel, 839 F.3d at 1204 (we “apply[] a presumption that a dispute is arbi-trable unless we may say with positive assurance that the parties intended otherwise”; “[t]o rebut the presumption, the party opposing arbitration must provide forceful evidence that the parties intended to exclude the dispute from arbitration.”) (quotation marks omitted). But, by presuming an issue is arbi-trable absent positive assurance of a contrary intent, we have it backward. Granite Rock requires us to look first to the parties' intent and if that intent is ambiguous, to use the presumption to assist in resolving the ambiguity. Granite Rock Co., 561 U.S. at 301-02, 130 S.Ct. 2847. M&G Polymer reaffirms this proposition. 135 S.Ct. at 933-35 (rejecting inference that parties to collective bargaining intend retiree benefits to vest for life; such inference “violates ordinary contract principles” and “distorts the attempt to ascertain the intention of the parties") (quotation marks omitted).

. Under Section 1.1 of the CBA, Spirit "recognizes the Union as the exclusive bargaining agent for the [described] collective bargaining unit” for purposes "of collective bargaining . with respect to rates of pay and other conditions of .employment." (CBA, Section 1.1, Appellant’s App'x at 76. (emphasis added)). But Section 1.2 provides: "For purposes of the remaining articles of this Agreement, the term ‘employees’ shall include only those persons who are a part of the unit as described in Section 1.1.” (CBA, Section 1.2, Appellant's App’x at 77 (emphasis added)).

. This explains why the Union may be precluded from bringing a grievance concerning what might be called a class-wide dispute but a single employee is not. Compare SPEEA v. Spirit Aerosystems, Inc. (SPEEA II), 541 Fed.Appx. 817, 819-20 & n.1 (10th Cir. 2013) (unpublished), with Majority Opinion in this appeal.

. Spirit points out that Section 15.1(d) of the CBA permits the sequential grievance process to start at Step 3 for disputes over the CBA’s no strike and lockout provisions. According to it, “[s]uch a carve-in would not be necessary if class-wide disputes over company policies already were arbitrable.” (Appellee’s Br. at 25-26.) But those are issues for Spirit and the Union, not individual employees. See also, Note 2, supra. Significantly, and despite the permissive and abbreviated arbitration provision for strikes and lockouts, that section also permits Spirit and the Union to resort to the courts for injunctive relief without invoking or exhausting the grievance process.