FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 14, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TL HARVEY,

    Plaintiff - Appellant,

v.

JAKE BUTCHER, Utah Highway Patrol
Officer; THOMAS SIMPSON, Utah
Highway Patrol Officer; STATE OF
UTAH DEPARTMENT OF PUBLIC
SAFETY HIGHWAY PATROL; KEITH
SQUIRES, Commissioner Utah
Department of Public Safety Highway
Patrol in his official capacity,

    Defendants - Appellees.

No. 21-4051
(D.C. No. 1:18-CV-00008-JNP)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.

_____

In this civil-rights case involving successive traffic stops, TL Harvey appeals

pro se from a district court order that granted the defendants' motion for summary

judgment on the basis of qualified immunity. Exercising jurisdiction under 28 U.S.C.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 1291, we reverse and remand for further proceedings so that the district court can address the constitutionality of both stops under the Fourth Amendment.

## BACKGROUND[1]

On January 11, 2016, Mr. Harvey was driving his Volkswagen Passat through Utah on his way to Wyoming. At 2:24 p.m., Utah Highway Patrol Trooper Thomas Simpson initiated a traffic stop of the car as it passed him on the interstate. The car had Arizona license plates and tinted windows. Trooper Simpson thought that the tint on the car's windows violated Utah law. He was unable to see Mr. Harvey, who is African-American.

After stopping the car, Trooper Simpson approached the passenger-side door and explained the reason for the stop to Mr. Harvey: "[Y]our windows are way too dark for the car." R., Vol. I at 369-70. Mr. Harvey responded that the car was licensed in Arizona. Trooper Simpson explained that the tint likely also violated Arizona law, and he asked Mr. Harvey if he lived in Arizona or Utah. Mr. Harvey indicated he lived in Minnesota.

Trooper Simpson used his tint meter to measure the amount of light passing through the car's front side windows. The meter reported 27.5% light transmittance, a violation of Utah law. *See* Utah Code § 41-6a-1635(1)(b) (2015) (prohibiting the

---

[1] In setting out the background of this qualified immunity case, we "view the evidence, and all inferences arising from that evidence, in the light most favorable to [Mr. Harvey]," *Emmett v. Armstrong*, 973 F.3d 1127, 1130 (10th Cir. 2020), meaning that we adopt his version of the facts so long as it "find[s] support in the record," *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (internal quotation marks omitted).

operation of a motor vehicle with a front side window that allows less than 43% light transmittance).

Trooper Simpson asked Mr. Harvey where he was headed and where he had come from. Mr. Harvey hesitated in responding and said that he was "on a trip," but he refused to provide any details. R., Vol. I at 401.

Trooper Simpson returned to his car to run checks on Mr. Harvey's license and registration. Because his registration showed an Illinois address, Trooper Simpson returned to Mr. Harvey's car and attempted to confirm Mr. Harvey's home address, given that his car had Arizona plates and he had a Minnesota driver's license. Mr. Harvey's explanation is not apparent in the record, but he evidently mentioned that he had another car registered in Utah. Trooper Simpson returned to his patrol car, completed the checks, and returned Mr. Harvey's license and registration.

Trooper Simpson gave Mr. Harvey a warning citation for the excessive tint and told him he was free to leave. The traffic stop concluded at 2:40 p.m., about 18 minutes after it began.

After Mr. Harvey drove away, Trooper Simpson contacted fellow Trooper Jake Butcher, who was on duty further east on the interstate with his narcotics-detection dog, Bear. They conversed over an internal messaging system:

[Trooper Simpson]: got a car for you to go stop

[Trooper Butcher] Joined The Chat

[Trooper Simpson]: I just let him go he[']s proba[bl]y at about milepost 100-101 on I-84 east

[Trooper Butcher]: what you got?

3

[Trooper Simpson]: red. Volks[wagon] with [Arizona] plates

[Trooper Simpson]: it[']s a lease car so it[']s to the guy but he[']s from [M]inn[e]sota

[Trooper Simpson]: keeps do[d]ging my questions of where[] he[']s coming from.

[Trooper Butcher]: ok i[']ll hurry and head that way

[Trooper Simpson]: window tint measured 27%

[Trooper Simpson]: so easy stop but if you can run your dog you might get something

[Trooper Butcher]: ok thanks. I[']ll watch for it

[Trooper Simpson]: AZ limit is 33% and MN limit is 50%

[Trooper Simpson]: either way he[']s under

[Trooper Butcher]: ok sounds good

[Trooper Simpson]: FYI he[']s been stopped prior in Utah for window tint accordi[ng] to RMS [Records Management System]

[Trooper Simpson]: can[']t even see the driver through [t]he window tint

*Id.* at 412 (italics and bold-face font omitted).[2]

Not long after leaving Trooper Simpson, Mr. Harvey drove by Trooper Butcher, who recognized the car and the "very dark" tinted windows. *Id.* at 416. Like Trooper Simpson, he could not see the driver and believed the tint violated Utah law.

At roughly 3:07 p.m., Trooper Butcher stopped Mr. Harvey's vehicle and approached the passenger-side door. He told Mr. Harvey that he initiated the stop

---

[2] The original print-out of the troopers' conversation was sealed by the district court. Accordingly, we quote the Troopers' conversation from Exhibit E to their summary judgment motion, which omits the sensitive information and was not sealed. We note, however, that the exhibit mistakenly attributes the comment, "AZ limit is 33% and MN limit is 50%," to Trooper Butcher. The comment was in fact made by Trooper Simpson.

because the windows appeared excessively tinted.  Mr. Harvey explained that he had just been stopped for a tint violation, and he gave his license and registration to Trooper Butcher.  Trooper Butcher asked Mr. Harvey "simple questions regarding the details of his trip, [but] he was unwilling to" answer.  *Id.* at 460.  Trooper Butcher returned to his patrol car and contacted dispatch for a records check on Mr. Harvey's license and registration.

While waiting on dispatch to gather the information, Trooper Butcher walked Bear around the outside of Mr. Harvey's car.  When Bear reached the back of the car, he "stopp[ed] and point[ed] at the left taillight," signaling the presence of narcotics.  *Id.* at 418.  Trooper Butcher notified Mr. Harvey of Bear's alert and told him to exit the car while he searched it.  Mr. Harvey complied and asked that Trooper Butcher's supervisor be present during the search.  Trooper Butcher radioed dispatch, and a supervisor, Sergeant Bryce Rowser, headed to the scene at 3:18 p.m.

Sergeant Rowser arrived around 3:40 p.m.  Trooper Butcher then searched the car but found no narcotics.  He used Sergeant Rowser's tint meter to test the windows' tint, because his own meter wasn't functioning, and he found light transmittance similar to what Trooper Simpson had found.  Trooper Butcher issued Mr. Harvey another warning citation and returned his license and registration.  The encounter ended at 4:11 p.m.— roughly sixty-five minutes after Trooper Butcher pulled him over.

In January 2018, Mr. Harvey filed this action pro se in federal district court under 42 U.S.C. § 1983 and § 1985(3), complaining of the traffic stops and search of his car.  In an amended complaint, he claimed that Troopers Simpson and Butcher conspired with

each other and violated the Fourth Amendment's prohibition against unreasonable searches and seizures, and the Fourteenth Amendment's guarantees of equal protection and due process. He further claimed that Trooper Butcher violated the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process by having him stand outside in the cold pending the search of his car. In addition to his federal claims against Trooper Butcher, Mr. Harvey referenced the Utah Constitution, but he made no additional allegations.[3]

Troopers Simpson and Butcher moved for summary judgment, asserting qualified immunity against Mr. Harvey's federal claims and arguing there was no violation of the Utah Constitution. Mr. Harvey filed a response. A magistrate judge considered the matter and recommended that the Troopers' motion be granted in full. The magistrate judge's report and recommendation (R&R) warned Mr. Harvey that he had fourteen days to file an objection, and that his "[f]ailure to do so may constitute waiver of objections upon subsequent review." R., Vol. I at 938.

On the last day of the fourteen-day period, February 19, 2021, Mr. Harvey filed an "Opposition" to the R&R. *Id.* at 939. He argued that Trooper Simpson unreasonably extended the duration of the traffic stop by (1) asking "questions unrelated to the mission

---

[3] Mr. Harvey also sued Keith Squires, the former Commissioner of the Utah Department of Public Safety, for failing to supervise and discipline Troopers Simpson and Butcher. On appeal, Mr. Harvey does not challenge the district court's dismissal of that claim, and we do not consider it. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

at hand," and (2) "call[ing] ahead to [Trooper] Butcher and instructing [him] to stop Plaintiff and use [Bear]." *Id.* at 939, 942. He also stated that "a jury should consider" Trooper Butcher's communications with Trooper Simpson and Trooper Butcher's use of Bear. *Id.* at 945. Further, he maintained that Trooper Butcher "show[ed] a consciousness of guilt" by erasing his dash-cam video of the traffic stop sixty days later. *Id.* at 944.

Mr. Harvey then began supplementing his objections to the R&R. On February 22, he filed an affidavit, alleging that the defendants had resisted his discovery efforts by "asserting non-existing privileges and other legal [] goo-goo." *Id.* at 949. He also filed a second Opposition, arguing that Trooper Butcher's traffic stop and use of Bear violated the Fourth Amendment. And on February 24, he filed a third Opposition, asserting that Troopers Simpson and Butcher were not entitled to qualified immunity.[4]

The district court adopted the R&R and granted the Troopers' summary judgment motion. The court explained that only Mr. Harvey's first Opposition, filed on February 19, 2021, was timely. Specifically, the court noted the R&R was filed on February 2, and that its service by mail to Mr. Harvey added three days to the fourteen-day time period, resulting in the February 19 deadline. *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."); *id.* 6(d)

---

[4] Mr. Harvey did not explain in any of the supplemental filings why his arguments could not have been included in the first Opposition. He simply asserted that the second and third Opposition documents "should be considered as part of the first [Opposition] Pleading dated and submitted to the Court on February 19, 2021." R., Vol. I at 963, 974.

(adding three days if service is accomplished by mail).  Consequently, the district court applied the firm-waiver rule and declined to consider the objections presented in Mr. Harvey's affidavit and second and third Oppositions.

As for Mr. Harvey's objections in the first Opposition, the district court reviewed them de novo and determined that Trooper Simpson's questions about his travel plans and home address were permissible inquiries and did not measurably extend the duration of the stop for the window tint.  As for Trooper Simpson's message to Trooper Butcher, the district court noted it occurred after the traffic stop's conclusion, and therefore, the court believed, could not have prolonged the stop's duration.  Finding no constitutional violation, the district court ruled that Trooper Simpson was entitled to qualified immunity.  Further, the district court found that Mr. Harvey had waived objections to the R&R's treatment of his other federal claims and his state law claim by not timely objecting.  Finally, the district court declined to impose a spoliation sanction against Trooper Butcher for erasing his dash-cam video because the evidence showed it was erased in compliance with Utah Highway Patrol policy, long before any notice of litigation, and there was no evidence of bad faith.  Thus, the district court ruled that Trooper Butcher was also entitled to qualified immunity.

## DISCUSSION
### I.  Standards of Review

"We review de novo the district court's order granting summary judgment . . . on qualified-immunity grounds."  *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  "When a defendant asserts qualified immunity at summary judgment, the burden

shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Id.* (internal quotation marks omitted). The plaintiff must "show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Gutierrez v. Cobos*, 841 F.3d 895, 900-01 (10th Cir. 2016) (internal quotation marks omitted).

In conducting our review, we construe Mr. Harvey's pro se filings liberally, but we do not act as his advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## II.  The Firm-Waiver Rule

Under this court's firm-waiver rule, "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). If a party fails to make a timely objection, he "waives appellate review of both factual and legal questions." *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). Additionally, an objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *One Parcel of Real Prop.*, 73 F.3d at 1060.

**A.    Timeliness**

Mr. Harvey argues that the district court miscalculated the filing deadline for his objections. He reasons that all of his supplemental filings were timely because "7 to 10 days" should have been used for service by mail rather than Rule 6(d)'s three days. Aplt. Br. at 15. He states that the Covid-19 pandemic "was affecting every element of life

9

during this time" and that "the head of the Postal System . . . was intentionally implementing policies and practices for the sole purpose of delaying the U.S. Mail." *Id.* But Mr. Harvey overlooks the fact that despite these perceived obstacles, he was able to file his first Opposition on time. And he does not explain why the arguments presented in his affidavit and second and third Oppositions could not have been included in his first Opposition. We conclude that the district court properly calculated the filing deadline and determined that only the first Opposition was timely.

## B.    Specificity

But we disagree with the district court's interpretation of the scope of the first Opposition as limited to Trooper Simpson's conduct. In that document, Mr. Harvey relied heavily on two cases relevant to Trooper Butcher's traffic stop and use of Bear: *Rodriguez v. United States*, 575 U.S. 348 (2015), and *United States v. Peters*, 10 F.3d 1517, 1522 (10th Cir. 1993). In *Rodriguez*, the Supreme Court held that police may not prolong a traffic stop to conduct a dog sniff unless the officer has reasonable suspicion of criminal activity. 575 U.S. at 357-58. And in *Peters*, this court held that an officer who has conducted a traffic stop and whose "reasonable suspicion [of criminal activity] has been dispelled or probable cause has not developed . . . may not release the suspect[,] . . . wait until he has travelled down the road a few miles, and then make a second [traffic] stop based solely on the conduct that has already proved to be illusory" or "*call[] upon a different officer to make the second intrusion in his stead.*" 10 F.3d at 1522 (emphasis added). Mr. Harvey's reliance on these two cases is consistent with an objection to the magistrate judge's ruling on his Fourth Amendment claim against both Troopers.

Moreover, other aspects of his first Opposition indicate that it was predicated on more than just Trooper Simpson's conduct. For instance, Mr. Harvey stated that both Troopers relied on his car's tinted windows to stop him, and he argued that a jury should consider Trooper Butcher's communications with Trooper Simpson and the ultimate use of Bear to justify the search. And Mr. Harvey specifically complained that Trooper Simpson had "called ahead to [Trooper] Butcher and instructed [him] to stop Plaintiff and use [Bear]." R., Vol. I at 942. Finally, we note that Mr. Harvey sought the imposition of a spoliation sanction against Trooper Butcher for the destruction of his dash-cam video.[5] Although Mr. Harvey's first Opposition is not a model of clarity, we conclude that he preserved for district court review the lawfulness of both traffic stops and the resulting search.[6]

The question then becomes whether we proceed on our own to resolve the Fourth Amendment issue. The district judge did not address *Peters* in any way. Nor did the district judge address *Rodriguez*'s holdings about the permissible use of a drug-detection

---

[5] On appeal, Mr. Harvey does not challenge the district court's rejection of his spoliation argument, so we do not address that issue. *See Tran*, 355 F.3d at 1266.

[6] We agree, however, with the district court's application of the firm-waiver rule on his other federal claims and his Utah Constitution claim. Mr. Harvey does not invoke the rule's interests-of-justice exception. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (lifting the bar to appellate review if warranted by "a *pro se* litigant's effort to comply [with the firm waiver rule], the force and plausibility of the explanation for his failure to comply, and the importance of the issues raised" (alterations and internal quotation marks omitted)). And "we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

dog during a traffic stop when an officer has or has not developed a reasonable suspicion of criminal activity. And although the magistrate judge mentioned *Peters* in a footnote, she distinguished it without discussing the effect of Trooper Simpson's message to Trooper Butcher to "go stop" Mr. Harvey's car so "you can run your dog," and Trooper Butcher's response, "ok i[']ll hurry and head that way." R., Vol. I at 412. Unlike the magistrate judge, we are not convinced that the Troopers' communications lack Fourth Amendment relevance simply because (1) Trooper Simpson is not a supervisor, and (2) Trooper Butcher perceived a window tint violation. Finally, the Appellees do not address these points and the relevant aspects of *Rodriguez* and *Peters* on appeal.

Although "[s]uccessive investigatory stops are not per se prohibited," they are "inherently more intrusive and coercive than the first." *United States v. Padilla-Esparza*, 798 F.3d 993, 1000 (10th Cir. 2015) (internal quotation marks omitted). Thus, we decline to address the Fourth Amendment issues applicable to this case in the first instance. The district court is better suited for that task.[7]

---

[7] To the extent Mr. Harvey insists the district judge should have reopened discovery based on his February 22 affidavit, we disagree. The affidavit was untimely filed as an objection to the R&R. And it was not filed "in direct response to a motion for summary judgment," as required by Fed. R. Civ. P. 56(d). *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006).

**CONCLUSION**

We reverse the district court's judgment and remand for further proceedings consistent with this Order and Judgment. In doing so, we express no view as to the outcome of the district court's renewed Fourth Amendment analysis.

Entered for the Court


Joel M. Carson III
Circuit Judge