**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 11, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KEITH PURSER,

    Plaintiff - Appellant,

v.

DOUGLAS GILLILAND; TAURUS OF
TEXAS GP, LLC; CLUB DEAL 113/114
PARK PLAZA AND GRAND
JUNCTION, LP; CLUB DEAL 127
MERK GRAND JUNCTION, LP,

    Defendants - Appellees.

No. 24-1503
(D.C. No. 1:22-CV-02374-GPG-RTG)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

_____

In this diversity action, _see_ 28 U.S.C. § 1332, Keith Purser sued Douglas

Gilliland and entities affiliated with him for breach of contract and unjust

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    Appellees' motion to waive oral argument is granted to the extent consistent with this footnote.

enrichment.  The district court dismissed Purser's claims, and he appeals.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

In 2012, Purser contacted Gilliland to discuss developing a "community of tiny homes and commercial properties" in an area of Grand Junction, Colorado, in particular on two properties owned by entities affiliated with Gilliland (the "Merkel" and "Mosaic" tracts).  R. vol. 1 at 18.  After the two met in December 2012, Gilliland emailed Purser:

> After our meeting I [met] with the city staff and they were encouraging regarding the land use you and I spoke about.  My thought at this point is that if you have an interest in being involved in the development of the site that you align yourself with an investor who can purchase the lots we produce for the concept we have discussed, and then we work together to be sure the homes are built according to a pre agreed upon design criteria. *If this is something you want to pursue let me know*.

*Id.* at 47 (emphasis added).  Purser did not respond, and the two had no further communication for almost five years.

Purser next contacted Gilliland in August 2017, indicating his interest had shifted to development on a different property (the Halandras property) that adjoined the Merkel tract.  Purser then encouraged Gilliland to purchase the Halandras property from its owners, who had agreed to pay Purser a fee if he found a buyer.

In May 2018, a Gilliland-affiliated entity, Taurus of Texas GP, LLC (Taurus), entered into a contract to purchase the Halandras property.  However, Taurus negotiated for the option to terminate that contract at its discretion.  Some evidence suggests Taurus never intended to complete the purchase, but instead put the

Halandras property under contract only to help Gilliland and the other entities win approval for beneficial re-zoning of the Merkel and Mosaic tracts.[1]  And in fact, once those zoning changes were completed, Taurus terminated the Halandras contract.

The entity that owned the Merkel tract then sold it to a buyer who Purser had previously introduced to Gilliland.  Gilliland offered to pay Purser $20,000, "as a courtesy thank-you."  R. vol. 1 at 402 (internal quotation marks omitted).  But Purser refused and "instead demanded several million dollars."  *Id.* at 25.

## II.

Purser then filed this action against Gilliland, Taurus, and the two entities that own the Merkel and Mosaic tracts.  He first brought a claim alleging he was a third-party beneficiary to Taurus's terminated contract to purchase the Halandras property.  But in amended pleadings, he abandoned that claim in favor of a breach of contract claim, alleging defendants had promised in December 2012 that he would "receive a commission, finder's fee, or some other form of payment" for selling lots they would develop on the Merkel and Mosaic tracts.  *Id.* at 26.  Purser also pled a claim in the

---

[1] For instance, in a May 2019 draft letter to investors, Taurus representatives stated:

> Our main objective is to amend the Halandras Tract [] zoning . . . and then use the approved Halandras Zoning to re-zone the Merkel Tract.  As we do not intend to acquire the Halandras site, we view the $300,000 in deposit money [paid on the Halandras purchase agreement] as 'permitting costs' for [the Merkel tract], allowing us to get our preferred zoning and . . . to sell the land . . . at the most attractive market value.

R. vol. 1 at 398–99 (internal quotation marks omitted).

3

alternative for unjust enrichment, alleging he "lobbied the city, introduced Mr. Gilliland to several influential people . . ., located the buyer for the lots and the builder for the tiny homes . . ., and spent years researching strategizing, and consulting with Mr. Gilliland," and was "entitled to recover the reasonable value of the benefits that he conferred." *Id.* at 27.

The district court dismissed the breach of contract claim, concluding Purser "failed to plausibly plead that a contract ever existed," and therefore had not stated a claim on which relief could be granted. Suppl. R. at 64. It separately granted summary judgment against the unjust enrichment claim. Purser appeals.

III.

Because Purser appeals pro se, we construe his briefs liberally. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But because we do not act as his advocate, we will not search the record, conduct research, or construct arguments on his behalf. *See id.* at 840, 841; *see also Iweha v. Kansas*, 121 F.4th 1208, 1235 (10th Cir. 2024) ("The first task of an appellant is to explain to us why the district court's decision was wrong." (internal quotation marks omitted)).

A.

Reviewing the dismissal of Purser's breach of contract claim de novo, and applying the same standards under Federal Rule of Civil Procedure 12(b)(6) as the district court, *see Sagome, Inc. v. Cincinnati Ins. Co.*, 56 F.4th 931, 934 (10th Cir. 2023), we affirm its ruling.

4

"To state a breach of contract claim, a party must plead sufficient facts to plausibly allege . . . the existence of a contract," along with other elements. *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023) (internal quotation marks omitted) (applying Colorado law).  Like the district court, we conclude the well-pled factual allegations—treated as true and viewed in Purser's favor, *see Sagome*, 56 F.4th at 934—fail to plausibly allege he formed a contract with any of the defendants.  As the district court explained:

> In 2012, Defendant Gilliland emailed Plaintiff Purser—documenting that a meeting had occurred and indicating that there may be conditions under which the parties could work together.  Rather than indicating the existence of a contract, *the 2012 email reflects that no agreement was made.  It merely left open the potential for future negotiations.*  A letter or writing contemplating further negotiations between the parties does not constitute an offer capable of acceptance—instead, *such preliminary negotiations reflect the absence of an enforceable agreement.*

Suppl. R. at 62 (emphasis added) (citing *Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009) (recognizing "preliminary negotiations" do "not constitute an offer . . . properly capable of acceptance")).[2]

Indeed, Gilliland's email expressly called for some response from Purser, *if* he wanted to "*pursue*" an agreement:  "*If* this is something you want to pursue, *let me*

---

[2] The district court concluded it could consider emails attached to defendants' motion to dismiss when applying Federal Rule of Civil Procedure Rule 12(b)(6) because they (1) are "referenced in the complaint," (2) are "central to [Purser's] claim" and (3) their authenticity is undisputed.  Suppl. R. at 58 n.1 (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)).  Purser does not challenge that ruling, and we also consider and rely on the emails.  *See Gee*, 627 F.3d at 1186; *see also Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) (stating issues not raised on appeal are waived).

*know.*" R. vol. 1 at 47 (emphasis added). But Purser did not respond. From this record, we must agree with the district court that Gilliland's 2012 communications "[did] not constitute an offer capable of acceptance," Suppl. R. at 62; thus, "there never was an enforceable agreement," *id.* at 63. *See Sumerel*, 232 P.3d at 134 (holding where an email used "qualifying and indefinite language" and "did not solicit an acceptance but rather solicited a return call," it "did not constitute an offer capable of acceptance").

Resisting this conclusion, Purser maintains Gilliland extended "a unilateral offer to involve him in property development" in December 2012, that he claims to have accepted by performance in March 2018, "by aligning himself with an investor," namely, the eventual buyer of the Merkel tract. Aplt. Opening Br. at 6.[3] But we again agree with the district court that this theory of contract formation is not plausibly alleged. Although Purser's complaint does allege "Gilliland promised that he would build the lots on the Mosaic or Merkel Tract and that Mr. Purser . . . would sell the lots," R. vol. 1 at 18, we disregard this allegation both because it is conclusory, i.e., lacking "any factual enhancement," *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023), and also because it is contradicted by Gilliland's December 2012 email demonstrating he had not extended such a binding promise or offer, *see id.* at 1145; *see also supra*, n.2. And because the well-pled facts show Gilliland did not extend an offer capable of acceptance, Purser's claim to have

---

[3] We cite Purser's briefs using the page numbers in the court's CM/ECF header.

6

accepted such an offer, over five years later, does not plausibly allege that a contract was formed. *See Sumerel*, 232 P.3d at 133 (stating contract formation requires that "one party makes an offer and the other accepts it").

B.

We also affirm the entry of summary judgment against Purser's unjust enrichment claim. Our review is de novo, viewing the evidence and all reasonable inferences in Purser's favor. *See Russell v. Driscoll*, 157 F.4th 1348, 1350 (10th Cir. 2025). However, Purser has waived any challenge to the district court's ruling, because his opening brief does not contest its stated reasons for granting summary judgment. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in [a party's] opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

The district court's summary judgment order separately considered Purser's two theories of unjust enrichment. First, it rejected his theory that defendants were unjustly enriched by his time and efforts promoting tiny home developments, particularly lobbying local officials for re-zoning. The district court ruled this theory failed as a matter of law because Purser "could have attempted to form a contract [with defendants] before he performed his alleged work," but had not done so. R. vol. 1 at 409; *see also id.* at 405 (stating parties "'are generally not liable for services or goods for which [they] did not contract,'" (quoting *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 121 (Colo. 1998)), and liability should not be imposed for " 'a forced exchange,'" meaning "'for a benefit that the recipient should

7

have been free to refuse'" (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2(4) (2011))).

Second, the district court rejected Purser's theory of unjust enrichment based on Taurus's terminated contract to purchase the Halandras property. It concluded Purser had not pled this theory in his complaint and therefore rejected it as an improper attempt to amend his pleadings via summary judgment briefing.

On appeal, Purser does not contest either of these rulings. By not explaining why he thinks the district court's analysis of these issues was wrong, he has failed to carry his burden on appeal, *see Iweha*, 121 F.4th at 1235, and waived his opportunity to challenge the entry of summary judgment, *see Tran*, 355 F.3d at 1266.

Purser's only appellate argument related to unjust enrichment attacks the district court's additional conclusion that his agreement to be paid a fee for sale of the Halandras property was "transparently a generic real estate commission," and therefore Colorado law would prohibit him from recovering based on that agreement, because he had not held an active real estate license. *Id.* at 412. For that reason, the district court concluded Purser's unjust enrichment claim based on the Halandras transaction would fail as a matter of law, "*even if*" it had been included in his complaint. R. vol. 1 at 413 (emphasis added). Purser disputes that conclusion, arguing his agreement was for a permissible "'finder's fee,'" rather than a prohibited "commission." Aplt. Opening Br. at 13. But this issue has no bearing on the district court's first and dispositive reason for rejecting this theory of liability, because it was

8

not included in Purser's complaint.  Thus, Purser has not offered any reason to reverse that ruling.

IV.

For the reasons above, we affirm.

Entered for the Court

Gregory A. Phillips
Circuit Judge